597 A.2d 1012

**Morton H. HOLLANDER**

v.

**Adele R. HOLLANDER.**

**No. 1995, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Nov. 1, 1991.

158

William P. Englehart, Jr. (Nolan, Plumhoff & Williams, Chtd., on the brief), Towson, for appellant.

G. Warren Mix (Turnbull, Mix & Farmer, on the brief), Towson, for appellee.

Argued before GARRITY, FISCHER and CATHELL, JJ.

CATHELL, Judge.

The domestic dispute between Morton and Adele Hollander did not cease with the judgment of absolute divorce from the Circuit Court for Baltimore County. Specifically, Morton Hollander appeals from the Order of Determination of Marital Property and Alimony given by Brennan, J., on March 20, 1990, and from the denial of his Motion to Alter, Amend and Revise Judgment. Alleging error in the judg-

ment as to the monetary award, alimony and counsel fees, Dr. Hollander raises these questions:

1. Did the trial court err in making a monetary award from Husband to Wife based upon his alleged dental practice?

2. Did the trial court err in declining to recognize and enforce Husband's non-marital property interest in certain real property?

3. Did the trial court err in making an award of alimony from Husband to Wife?

4. Did the trial court err in making an award of attorney fees from Husband to Wife?

We conclude that the trial court properly classified the dental practice and the real property in issue as marital property. We hold that the court's reliance on the value of the practice as of 1986 to establish current value was justified under the circumstances of this case. We further hold that appellant has failed to preserve the other issue he raises with respect to the method of valuation utilized by appellee's expert and that the trial court did not abuse its discretion in awarding alimony or counsel fees. Accordingly, we shall affirm. We explain.

## FACTS

The parties were married in June of 1952. During their marriage of more than thirty-seven years, they raised three children to adulthood.

Dr. Hollander has been practicing dentistry since 1943. He first established his dental practice in the home of his parents. This was also the location of the Hollanders' first apartment. They lived in the third floor apartment for two years of their marriage. At the time of their marriage, Mrs. Hollander worked for the Baltimore City Board of Education. However, Dr. Hollander, not wanting his wife to work, told her to leave her job because he would take care of her. Mrs. Hollander then took responsibility for raising the children, caring for the home and even assisting her husband with his dental practice.

In 1967, Dr. Hollander moved his dental office to the Hollanders' marital residence. Dr. Hollander testified that this home was purchased in 1958 with money that he had saved prior to marrying his wife. According to his testimony, these resources were kept in a personal savings account segregated from the couple's funds. In addition, Dr. Hollander also testified that he later redeemed the ground rent with money from this same premarital fund. Before the purchase of their new home, the couple had moved from the apartment in the doctor's family home into another apartment to " 'save money to purchase a home,' despite the fact that he had $130,000.00 saved." Both the house and the land were titled as tenants by the entirety.

One of the children, Melissa, joined her father's dental practice in 1980. The two shared patients, but Melissa also developed her own patients. According to testimony, common office expenses were shared; however, they kept separate records and reported their income as sole proprietorships.

In the fall of 1985, Dr. Hollander allegedly executed a letter giving Melissa his dental practice. Beginning in January of 1986, Dr. Hollander was to receive a limited salary of $8,000 per year. The purported consequences of the "gift" did not occur as planned, however. Melissa took time off to give birth to a child, and Dr. Hollander continued to work full time at the practice. He filed an income tax return showing earnings close to $80,000 for the year of 1986.

The parties separated in February of 1987. The circumstances that led to the estrangement are of no consequence to this appeal. The judgment for absolute divorce was dated September 5, 1989.

## THE LAW

### I. MONETARY AWARD

The primary contentions of appellant focus on the monetary award. Dr. Hollander asserts that the trial court

utilized an improper basis for granting the award as it contained non-marital property.

We shall first briefly discuss the mechanics of granting a monetary award. The Marital Property Act requires that, before a monetary award is granted, the following three-step process occur: (1) if an equitable adjustment over and above the distribution of the spouse's property in accordance with its title is an issue, the court shall determine which property is marital property, Md.Fam.Law Code Ann. § 8–203 (1984 & Supp.1991); (2) the court shall then determine the value of all marital property, § 8–204; and finally, (3) the court may make a monetary award as an adjustment of the parties' equities and rights "concerning marital property, whether or not alimony is awarded," § 8–205(a).

If an award is deemed appropriate, the court then must consider each of the ten factors enumerated in section 8–205. *Harper v. Harper,* 294 Md. 54, 79, 448 A.2d 916 (1982); *Wilen v. Wilen,* 61 Md.App. 337, 355, 486 A.2d 775 (1985); *Ward v. Ward,* 52 Md.App. 336, 339, 449 A.2d 443 (1982). *See also Quinn v. Quinn,* 83 Md.App. 460, 464, 575 A.2d 764 (1990); *Melrod v. Melrod,* 83 Md.App. 180, 185, 574 A.2d 1, *cert. denied,* 321 Md. 67, 580 A.2d 1077 (1990).

Dr. Hollander alleges that the court erred while executing the first step required by the Marital Property Act. He contends that neither his dental practice nor the marital home should have been characterized as marital property. As a result, the monetary award granted to his wife must be vacated. We disagree. The determinations made by the court below were correct.

## A. *Dental Practice*

Before addressing the issue of whether the dental practice is marital property, we must examine the question of ownership presented by appellant. He contends that the evidence produced at trial "unequivocally established that Husband formally gave his dental practice to his daughter...." Thus, the trial court should not have classified the practice as marital property because it was no longer

the property of either party. After reviewing the doctrine of dissipation, we do not find this argument convincing.

Judge Alpert, for this Court, clearly stated the rationale of including dissipated property in a monetary award:

[I]t would clearly be against the Legislature's stated public policy to permit one spouse to squander marital property and render it impossible to make an equitable award of property. Therefore, where a chancellor finds that property was intentionally dissipated in order to avoid inclusion of that property towards consideration of a monetary award, such intentional dissipation is no more than a fraud on marital rights and the chancellor should consider the dissipated property as extant marital property ... to be valued with the other existing marital property.

*Sharp v. Sharp,* 58 Md.App. 386, 399, 473 A.2d 499 (1984) (citations omitted). *See also Court v. Court,* 67 Md.App. 676, 686, 509 A.2d 693 (1986); *Rosenberg v. Rosenberg,* 64 Md.App. 487, 502, 497 A.2d 485, *cert. denied,* 305 Md. 107, 501 A.2d 845 (1985).

The court in the case *sub judice* found "[i]t ... quite obvious that Dr. Morton Hollander ... attempted to deceive this Court concerning his dental practice and earnings so as to affect his valuation of the marital property." We consider the evidence sufficient to support this conclusion. The trial court chose not to believe the appellant, his daughter, or his accountant. The court also placed emphasis on the fact that appellant continued to maintain an identical lifestyle, both professional and personal, after the alleged gift took place. During the trial, the judge had the opportunity to observe the demeanor of the parties, to judge their credibility, and to pass upon the weight to be given their testimony. *Schweizer v. Schweizer,* 55 Md.App. 373, 380–81, 462 A.2d 562 (1983), *aff'd and modified on other issues,* 301 Md. 626, 484 A.2d 267 (1984). We do not find it clearly erroneous for the trial court to conclude that the dental practice was "given" to Melissa to avoid the consequences of the impending divorce.

 Relying on the recent case of *Prahinski v. Prahinski*, 321 Md. 227, 582 A.2d 784 (1990), affirming this Court's opinion, 75 Md.App. 113, 540 A.2d 833 (1988), the appellant next seeks to attack the trial court's ruling that the dental practice is marital property. Dr. Hollander contends the dental practice is not marital property because it consists of pure, professional goodwill.[1] When the Court of Appeals addressed the issue of whether professional goodwill is marital property in *Prahinski*, it concluded *only* that "the goodwill of a solo law practice is personal to the individual practitioner. Goodwill in *such* circumstances is not severable from the reputation of the sole practitioner...." *Prahinski*, 321 Md. at 239, 582 A.2d 784 (emphasis added). Because the Court limited its holding to the express facts before it, we do not believe it answered the question before us.[2] Although we find *Prahinski* instructive, we view the question of whether the goodwill of a dental practice is marital property as one of first impression.

Before reaching their conclusions in the respective cases of *Prahinski*, both the Court of Appeals and Judge Bloom for this Court reviewed the decisions of the courts in other states that have addressed this issue. The majority of these jurisdictions treat professional goodwill as marital property. *In re Marriage of Nichols*, 43 Colo.App. 383, 606 P.2d 1314 (1979) (solo dental practice); *Wright v. Wright*, 469 A.2d 803 (Del.Fam.Ct.1983) (solo dental practice); *In re Marriage of White*, 98 Ill.App.3d 380, 53 Ill.Dec. 786, 424 N.E.2d 421 (1981), *appeal after remand*, 151 Ill.App.3d 778, 104 Ill.Dec. 424, 502 N.E.2d 1084 (1986), *appeal denied*, 114

---

1. The appellant asserts the dental practice consists entirely of pure, professional goodwill; however, as we perceive it, a dental practice contains valuable equipment, patient lists, patient records and other substantial assets as well as goodwill.

2. Appellant, in his brief, relies on the similarities between *Prahinski* and the case *sub judice* to reach the conclusion that the goodwill of his dental practice is not marital property. Specifically, he points to the virtually identical testimony of the expert witnesses on value. We note that the Court of Appeals reached its conclusion without even considering expert testimony; thus, it forms no part of their decision.

Ill.2d 546, 108 Ill.Dec. 426, 508 N.E.2d 737 (1987) (dentist as sole shareholder in professional corporation); *Hanson v. Hanson*, 738 S.W.2d 429 (Mo. banc 1987) (oral surgery partnership); *Poore v. Poore*, 75 N.C.App. 414, 331 S.E.2d 266, *disc. rev. denied*, 314 N.C. 543, 335 S.E.2d 316 (1985) (solo dentist in professional association); *In re Marriage of Goger*, 27 Or.App. 729, 557 P.2d 46 (1976) (dentist as sole shareholder in professional corporation); *Sorensen v. Sorensen*, 769 P.2d 820 (Utah App.1989), *cert. granted*, 779 P.2d 688 (Utah 1989) (dentist as sole shareholder in professional corporation); *In re Marriage of Fleege*, 91 Wash.2d 324, 588 P.2d 1136 (1979) (solo dental practice); *Peerenboom v. Peerenboom*, 147 Wis.2d 547, 433 N.W.2d 282 (1988) (solo dental practice). Nevertheless, there are two other views followed by a smaller number of states. Some of these jurisdictions take the position that professional goodwill is not marital property because it is personal to the practitioner. *Powell v. Powell*, 231 Kan. 456, 648 P.2d 218 (1982); *Depner v. Depner*, 478 So.2d 532 (La.App. 1st Cir.1985), *cert. denied*, 480 So.2d 744 (La.1986); *Nail v. Nail*, 486 S.W.2d 761 (Tex.1972). Other courts require the question to be answered on a case by case basis. *Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987); *Antolik v. Harvey*, 7 Haw.App. 313, 761 P.2d 305 (1988); *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986).[3]

The Court of Appeals stated that "[i]n order for goodwill to be marital property, it must be an asset having a separate value from the reputation of the practitioner." *Prahinski*, 321 Md. at 239, 582 A.2d 784. Goodwill cannot be based solely on the skill, experience or reputation of the practitioner if it is to be considered marital property. We hold that a dental practice can in fact have goodwill that is separate from the reputation of the dentist, and is, there-

**3.** For a more detailed list of the cases cited by the courts and the rationale for the various approaches, see *Prahinski*, 321 Md. at 234–35 nn. 2–4, 582 A.2d 784 and *Prahinski*, 75 Md.App. 113, 131–34, 540 A.2d 833.

fore, properly characterized as marital property. We explain.

■ First, we note that the Court of Appeals went to great lengths to distinguish the goodwill of a law practice from the goodwill of other professionals. *Prahinski*, 321 Md. at 239–41, 582 A.2d 784.[4] The Court stated that the practice of law involves special considerations which might not occur in other professional practices. *Prahinski*, 321 Md. at 240, 582 A.2d 784. For example,

> "[T]he sale of goodwill by a professional carries with it the obligation that he will abstain from practice in the future in the territory from which he binds himself to withdraw." It is clear that an attorney ... may not covenant to abstain from the practice of law, and therefore, may not sell his or her goodwill.

*Id.* (citation omitted). On the other hand, the Court pointed out, that other professionals such as dentists and physicians have no such prohibitions against selling their goodwill. *Id.* *See* cases cited therein. Another factor which played an equally important role in the decision of the Court was the applicability of the Rules of Professional Conduct. Rule 5.4(d) provides in part: "A lawyer shall not practice ... if: (1) a nonlawyer owns any interest therein...." The Court, in *Prahinski*, stated "[t]his rule clearly prohibits Leo from making Margaret a partner in his law practice." 321 Md. at 241, 582 A.2d 784. The Court of Appeals, thus, did not intend for its holding to be applied broadly over all professional practices.

Maryland is not the only state to differentiate between the goodwill of a law practice and the goodwill of other professional practices. One of the states formerly cited by other courts for its stalwart language against the position of characterizing goodwill as marital property has also

---

**4.** Judge Rodowsky, speaking for the dissenting members of the Court, stated that "the holding is clearly limited to solo legal practitioners." *Prahinski*, 321 Md. at 244, 582 A.2d 784.

distinguished law from other professions in the same way we now distinguish *Prahinski* from the case *sub judice.*

The Court of Appeals of Wisconsin in *Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343 (1981), held that the marital estate did not include the professional goodwill of a law partnership interest. The court explained that an asset such as goodwill would not be divisible where the value can only be set by judicial determination and can never be realized by a sale or other method of liquidating value. *Holbrook*, 309 N.W.2d at 355. The Court went so far as to state, "[w]e are not persuaded that the concept of professional goodwill as a divisible marital asset should be adopted in Wisconsin." *Holbrook*, 309 N.W.2d at 354. This statement, however, must now be read in light of the decision in *Peerenboom.* The *Peerenboom* court, seven years later when analyzing the good will of a solo dental practitioner, concluded that "[i]n contrast, in this case the record shows no ethical or contractual barrier to [the dentist] disposing of his interest in his dental practice.... [T]o the extent that the evidence shows that the goodwill exists, is marketable, and that its value is something over and above the value of the practice's assets and the professional's skills and services, it may be included as an asset in the marital estate...." *Peerenboom v. Peerenboom*, 147 Wis.2d 547, 433 N.W.2d 282, 284 (1988).

Because the value of goodwill can be realized by sale, it would not be inequitable to require the professional to pay the spouse a share of this asset. The Colorado Court of Appeals explains how goodwill derives its value:

Professional practices that can be sold for more than the value of their fixtures and accounts receivables have salable goodwill. A professional, like any entrepreneur who has established a reputation for skill and expertise, can expect his patrons to return to him, to speak well of him, and upon selling his practice, can expect that many will accept the buyer and will utilize his professional expertise. These expectations are a part of goodwill, and they have a pecuniary value. While we recognize that

professional goodwill is not an asset which has an independent market value, it can, in conjunction with the assets of the practice, be sold.

*In re Marriage of Nichols,* 43 Colo.App. 383, 606 P.2d 1314, 1315 (1979) (citation omitted). *See also Wright v. Wright,* 469 A.2d 803 (Del.Fam.Ct.1983); *Sorensen v. Sorensen,* 769 P.2d 820 (Utah App.1989), *cert. granted,* 779 P.2d 688 (Utah 1989); *In re Marriage of Fleege,* 91 Wash.2d 324, 588 P.2d 1136 (1979).

In *Sorensen,* the Utah Court of Appeals also held that a dentist practicing alone has goodwill that should be valued as marital property. Before reaching this conclusion, the court addressed the major arguments of those states that do not recognize professional goodwill in any context. First, some states contend goodwill is not an asset separate from the individual practitioner and is similar to a professional degree. *Sorensen,* 769 P.2d at 826. The *Sorensen* court found that goodwill is traditionally defined as an intangible *"property right"* and is not merely a factor contributing to the earning capacity of the professional. *Id.* It can be sold as part of the practice while the degree cannot. *Id.* at 827.

The second position taken by some states is that goodwill cannot be distinguished from future earning capacity and that it is only valuable to the extent it assures earnings in the future. *Sorensen,* 769 P.2d at 826. This argument has also been stated: "The practice is personal to the practitioner. When he or she dies or retires nothing remains." *Powell v. Powell,* 231 Kan. 456, 648 P.2d 218, 223 (1982). *See also Depner v. Depner,* 478 So.2d 532, 534 (La.App. 1st Cir.1985), *cert. denied,* 480 So.2d 744 (La.1986); *Nail v. Nail,* 486 S.W.2d 761, 764 (Tex.1972). Goodwill, however, is distinguishable from future earnings capacity:

When a professional retires or dies, his earning capacity also either retires or dies. Nevertheless, the goodwill that once attached to his practice may continue in existence in the form of established patients or clients, refer-

rals, trade name, location and associations which now attached [sic] to ... buyers of the practice.... [A] professional can transport all of his skill (earning capacity) to a new town, but patients or clients, reputation and referrals (goodwill) cannot always be transported.

*In re Marriage of Hall,* 103 Wash.2d 236, 692 P.2d 175, 178 (1984) (citations omitted).

█ The final argument put forth by a few states is that goodwill is difficult to value. *Sorensen,* 769 P.2d at 826. Although assessing the value of goodwill may seem a formidable task, the intricacy of the solution should not force any court to shirk its responsibility nor ignore the basic fact that goodwill holds considerable value for the professional. Value is an evidentiary matter; it is up to the party to demonstrate adequately that goodwill has present value. *Sorensen,* 769 P.2d at 828.

We accept and adopt the above arguments, and we conclude that a solo dental practice including its goodwill value is marital property that should be considered when granting a monetary award.[5]

Appellant, in challenging the trial court's valuation of the dental practice, first asserts that the trial court had no evidence of current value and that it erred in using a valuation as of 1986 in determining its current value. He maintained below that the practice had been given to his daughter in 1985. Therefore, according to appellant, there were no returns or records relating to value after that date. After refusing to produce any further records for subsequent years, he then argued below, and argues on appeal, that the valuation is erroneous because it was not updated to the time of trial.

As we see it, the trial court established the value of the practice as of the date it was dissipated and, in the absence of any credible evidence as to a different value, carried that

---

5. We are concerned here only with a solo dental practice. We do not address the applicability of our holding to a shared or communal dental practice.

value to the date of its award. In *Sharp v. Sharp*, 58 Md.App. 386, 396, 473 A.2d 499 (1984), we, in discussing dissipation, commented that the chancellor had found that evidence of the property's value in 1982 was sufficient to establish a value at the time of trial in 1983. We said in that regard that "[w]e perceive no error...." *Id.*

When valuating dissipated property, the value of the property at the time it is intentionally dissipated is evidence of value, and when it cannot be updated, may be sufficient, by itself, to establish current value. *Sharp*, 58 Md.App. at 396, 473 A.2d 499. To hold otherwise would permit a party who intentionally causes the dissipation to escape the consequences of his actions and would, in most instances, completely deprive the other party from the rightful benefits to which he or she may be entitled. When originally enacted, the Marital Property Act's preamble provided, in part, that it is "the policy of this State that when a marriage is dissolved the property interests of the spouses should be adjusted fairly and equitably...." Act approved May 29, 1978, Ch. 794, 1978 Md. Laws 2304, 2305.[6] To allow a party to dissipate property so that it has no further value would be to permit that party to defeat completely the purposes of the Act. We, under the circumstances of the case at bar, perceive no error in respect to the use of 1986 as the date of valuation.

Appellant further objects to the method used by the expert to place a value upon the dental practice. Appellee's expert witness, after discussing the method he had considered in arriving at a value of the dental practice, at one point summarized as follows:

> [T]he fact that in this instance this medical practice was netting the individual doctor 50 percent of gross. Ex-

---

6. Chapter 794 of the Laws of 1978 has been repealed and reenacted along with numerous other statutes in the comprehensive 1984 enactment of the Family Law Article.

penses appeared to be in line, there was nothing there that struck me as extraordinary, and therefore I felt comfortable, given that the assets had been increasing over the years, I felt comfortable employing a 100 percent of gross assets test and ultimately arrived at a value of $80,000 as being the fair market value for the medical practice as of December 31, 1986.[7]

At this point, appellant objected. In objecting, appellant stated:

Your Honor, let me object at this point.... Mr. Callan's evaluation date is 12/31/86.... [A]nd I urge the court to strike this testimony as being three years off the mark.... [S]o I object to this as having an improper basis in fact.

The trial court overruled his objection. Later, when the expert was directly requested to give his expert opinion on value, he responded:

Again I concentrated on the fact that the gross receipts were increasing generally year to year, certainly from 1980 through 1986 there was a substantial increase. Also, again I concentrated on the fact that the net profit that went to the doctor from the gross receipts was generally over 50 percent of the gross, which again is something that I would expect from a professional service business and therefore felt comfortable looking at the gross receipts from the medical practice, that using a rule of thumb of 100 percent of gross would be reasonable

---

7. The expert testified extensively about the business's operation. He commented that he had examined through records, "lab fees, professional expenses, seminars, travel, utilities and telephone, various supplies and office expenses recorded." He had also conversed with appellant's accountant. He further commented that he considered that appellant had generally been making over 50% of gross in the period examined. During extensive *voir dire,* Mr. Callan commented on the nature of the sale of such businesses referring to the importance of patient files, non-competition clauses, recommendations, etc. It is not entirely clear that this expert did not factor into his evaluation those other items we mention in this footnote.

under the circumstances, and therefore chose $80,000 as being the fair market value of the practice.

This evaluation came in without further objection.

■ We have previously discussed in a footnote that Mr. Callan, in his testimony, commented on the various matters he had considered in arriving at a decision to use the final method of evaluation. It is clear that he considered other factors in order to arrive at a method. We shall not, however, have to determine whether, under all of the facts in this case, Mr. Callan used a proper method of evaluation as this issue has not been preserved for appellate review. We explain.

Maryland Rule 2–517 states, in part: "(a) **Objections to Evidence.**—An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived."

When the expert finally offered his evaluation of the practice, there was no objection made. The only prior objection related, not to the method used to arrive at value, but to the date of evaluation. Appellant, additionally, had not requested a continuing objection pursuant to Md.Rule 2–517(a).

Appellant, in closing argument after all the evidence was in, for the first time, raised the matter of the method of evaluation used by appellee's expert in valuing the dental practice. *Even then*, he did not move to strike the evidence, but merely argued that it was an inappropriate method under *Prahinski*.

The Court of Appeals, in *Klein v. Weiss*, 284 Md. 36, 395 A.2d 126 (1978), reviewed an admissibility matter where the appellant had initially objected on relevancy grounds but later moved to strike on other grounds. That Court said:

> Shortly thereafter, when the appellees sought to introduce the original version of the certificate and agreement into evidence, the receiver objected "on the grounds that we have been stating."

It was not until the next day that the receiver made a motion to strike the original partnership documents and Whitehead's testimony concerning them that the discovery issue was first raised....

Since all of the receiver's objections were specifically based on relevancy grounds, he is thereby limited in his claim of error on appeal and ordinarily is deemed to have waived other grounds not mentioned. The receiver's objection on the ground that the appellees did not make adequate disclosures ... should have been made at the time the evidence was offered, and not in a subsequent motion to strike.

*Id.* at 55, 395 A.2d 126 (citations omitted).

We, in *Great Coastal Express, Inc. v. Schruefer,* 34 Md.App. 706, 369 A.2d 118, *cert. denied,* 280 Md. 730 (1977), were also considering an admissibility issue involving an expert opinion where a ground was argued on appeal that was different than the ground volunteered at the time an objection was raised below. We said:

The only objection that appellants offered to any of the testimony relating to the experiment was to the nature of the questions and the absence of the time of the experiment.... Although grounds for an objection need not be stated unless requested, Md.Rule 522 d., we have held that, if counsel volunteers his grounds at the time of the objection, he is bound on appeal to the grounds expressed. The procedures involved in the test and the results were thereafter brought before the court by continued question and answer, without objection.

Appellants now attempt to attack the experiment testimony because the experiment was not identical.... We do not believe that appellants have preserved that issue....

*Id.* at 723–24, 369 A.2d 118 (footnote omitted) (citation omitted). *See also Armstrong v. State,* 69 Md.App. 23, 28, 515 A.2d 1190 (1986), *cert. denied,* 309 Md. 47, 522 A.2d 392 (1987).

When the evidence in the case *sub judice* was admitted below, appellant never raised the admissibility issue he now raises. He has never moved to strike that evidence. Accordingly, that evidence was before the trial court. Appellant has failed to preserve the issue he now raises.[8]

### B. *Marital Home*

The relevant law is contained in Family Law Article § 8–201(e), which provides as follows:

(1) "Marital property" means the property, however titled, acquired by 1 or both parties during the marriage.

(2) "Marital property" does not include property:

(i) Acquired before the marriage;

(ii) Acquired by inheritance or gift from a third party;

(iii) Excluded by valid agreement; or

(iv) Directly traceable to any of these sources.

Md.Fam.Law Code Ann. § 8–201(e) (1984).

The definition of marital property is quite explicit; it excludes "any property acquired during the marriage that is *directly traceable* to a non-marital source." *Melrod v. Melrod,* 83 Md.App. 180, 187, 574 A.2d 1, *cert. denied,* 321 Md. 67, 580 A.2d 1077 (1990) (emphasis in original).

---

**8.** Because the issue has not been preserved, we do not determine the correctness of utilizing a capitalization of excess earnings method of valuating a dental business. We note, however, the approach of Delaware, Missouri, Utah, and Wisconsin in rejecting the consideration of future earning capacity as a sole measure of goodwill. *Wright v. Wright,* 469 A.2d 803, 807 (Del.Fam.Ct.1983); *Hanson v. Hanson,* 738 S.W.2d 429, 435 (Mo. banc 1987); *Sorensen,* 769 P.2d at 829; *Peerenboom v. Peerenboom,* 147 Wis.2d 547, 433 N.W.2d 282, 284 (1988). *Contra In re Marriage of White,* 151 Ill.App.3d 778, 104 Ill.Dec. 424, 502 N.E.2d 1084, 1086 (1986), *appeal denied,* 114 Ill.2d 546, 108 Ill.Dec. 426, 508 N.E.2d 737 (1987); *Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1, 9–10 (1983); *Poore,* 331 S.E.2d at 271 (1985). This position is not only most persuasive, but also appears to be consistent with our statement in *Prahinski* where we opined: "When only a capitalization of excess earnings method of evaluation is applied to a professional practice, the value determined, characterized as 'professional goodwill,' represents nothing more than an entity's future earning capacity; it is not necessarily an asset that may be sold, transferred, or assigned." 75 Md.App. at 132, 540 A.2d 833.

The Court of Appeals has held that the proper method to determine what is marital property is the source of funds theory. *Harper v. Harper,* 294 Md. 54, 80, 448 A.2d 916 (1982). Under this theory, property which is directly attributable to a contribution from non-marital funds will be characterized as non-marital property and not subject to equitable distribution. *Harper,* 294 Md. at 80–81, 448 A.2d 916. Thus, Dr. Hollander contends the house can be directly traced to his premarital savings account.

The trial court, however, found that there was no proof that the $130,000 was used for that purchase. The court placed emphasis on the fact that it was necessary for the parties to remain in apartments from the date of marriage until the purchase of the house to save money. The appellant asserts that there was uncontroverted evidence that he paid for the home from his own money. Despite this assertion, "[t]he trier of fact is not bound to accept the testimony of any witness even if it is uncontradicted." *Shapiro v. Chapman,* 70 Md.App. 307, 318, 520 A.2d 1330 (1987).

Once the trial court determined that there was no proof that non-marital funds had been used, it was forced to arrive at the conclusion that the home was marital property. "This inability to trace property acquired during the marriage *directly* to a non-marital source simply means that all property so acquired was marital property." *Melrod,* 83 Md.App. at 187, 574 A.2d 1 (emphasis in original). Because Dr. Hollander allowed marital and non-marital funds to commingle to the point where he could not prove non-marital funds were used to purchase the home, he must bear the loss of its non-marital status.

Based on our review of the evidence, the trial judge's fact-findings are not clearly erroneous; thus, we must affirm the finding that the home was marital property. Md.Rule 8–131(c).

## II. ALIMONY

Dr. Hollander argues that this was not a proper case for alimony because the trial court did not properly evaluate the factors set out in section 11–106(b) of the Family Law Article. We cannot reverse the judgment of the trial judge unless we conclude his findings were clearly erroneous or that in awarding alimony, he abused his discretion. *See Blake v. Blake*, 81 Md.App. 712, 728, 569 A.2d 724 (1990).

 The trial judge reviewed all the facts before awarding alimony. He is not required to use a formal "checklist" but may declare an award for alimony in any way that shows consideration of the necessary factors. *Blake*, 81 Md.App. at 728, 569 A.2d 724; *Newman v. Newman*, 71 Md.App. 670, 678, 527 A.2d 61 (1987). During the course of his memorandum, he referred to the parties' ages, their standard of living, duration of marriage, circumstances of estrangement, present mental and physical condition, and the ability of Mrs. Hollander to support herself.

 One of the errors cited by appellant was the judge's failure to set a length of time for the award. As we pointed out in *Rosenberg v. Rosenberg*, 64 Md.App. 487, 531, 497 A.2d 485, *cert. denied*, 305 Md. 107, 501 A.2d 845 (1985):

> Under the current statute, the principal function of alimony is rehabilitation.... The court may award alimony for an indefinite period of time, however, when it finds that:
>
> "(i) The party seeking alimony, by reason of age, illness, infirmity, or disability, cannot reasonably be expected to make substantial progress toward becoming self-supporting...."

The trial judge found that Mrs. Hollander had been borrowing money from her brother and had only found a job which paid her $55 per week. The trial judge did not abuse his discretion by awarding indefinite alimony to a 61–year–old spouse who had spent 37 years of her life taking care of her husband's home. *See Blake v. Blake*, 81 Md.App. at 728–

29, 569 A.2d 724; *Bricker v. Bricker*, 78 Md.App. 570, 575–77, 554 A.2d 444 (1989).

Dr. Hollander also cites the court's evaluation of his ability to pay, the circumstances of the separation and his physical health. As we have already stated, the court took these factors into consideration. We cannot conclude, based on the court's assessment of appellant's credibility, that the trial court's findings were clearly erroneous or that in awarding alimony he abused his discretion.

## III. COUNSEL FEES

Dr. Hollander disputes the award of counsel fees because the court deviated from treating the parties on an equal basis and it did not have an adequate statement detailing the fees. At trial, Mrs. Hollander introduced a non-itemized statement from her attorney in the amount of $5,880. The trial court ordered the husband to pay the full amount.

The proper test for awarding fees is whether, in light of the financial resources and needs of both parties, "there was substantial justification to prosecute or defend the proceeding before making an award of attorney's fees." *Blake*, 81 Md.App. at 730, 569 A.2d 724. In *Blake*, we found that an award of indefinite alimony illustrated the need of defending the wife's interest in the case. *Id.* Thus, Mrs. Hollander had substantial justification in defending the suit.

The court evaluated the appellant's ability to pay and found he was able to do so. "Just because the marital assets which were owned by the parties at the time of the divorce were divided equally hardly means that the Wife is in an equal position to pay (or, for that matter, should have been required to pay) her attorneys' fees...." *Wassif v. Wassif*, 77 Md.App. 750, 765, 551 A.2d 935, *cert. denied*, 315 Md. 692, 556 A.2d 674 (1989). Finally, a detailed list of expenses is not necessary. "A chancellor may well be able to appraise the value of an attorney's services on the basis of the record and his own knowledge and experience with-

out an account of the number of hours spent by the attorney." *Holston v. Holston,* 58 Md.App. 308, 326, 473 A.2d 459, *cert. denied,* 300 Md. 484, 479 A.2d 372 (1984).

Under these circumstances, the trial court's decision that Dr. Hollander should pay the entire amount of his former wife's counsel fees was an entirely proper exercise of judicial discretion, neither unauthorized nor clearly erroneous. *See Holston,* 58 Md.App. at 327, 473 A.2d 469; *Gravenstine v. Gravenstine,* 58 Md.App. 158, 182, 472 A.2d 1001 (1984).

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.