740 A.2d 125

**Jacob ROGINSKY**

v.

**Veronica BLAKE–ROGINSKY.**

**No. 121, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Nov. 4, 1999.

Charles J. Janus, Temple Hills, for appellant.

William F. Olmstead, LaPlata, for appellee.

Argued before DAVIS, EYLER and JOHN J. BISHOP, Jr. (Ret., specially assigned), JJ.

EYLER, Judge.

Jacob Roginsky, appellant, and Veronica Blake–Roginsky, appellee, were married on December 30, 1993, and separated on January 1, 1996. On July 26, 1994, one child, Joshua, was born. Appellee filed suit in the Circuit Court for Charles County seeking a divorce, alimony, child custody, child support, and a marital property award. After trial, by order dated March 22, 1999, the court granted to appellee an absolute divorce, child custody, child support, indefinite alimony, a marital property award, and attorney's fees. The court also entered an earnings withholding order with respect to the child support and alimony payments.

Appellant appealed to this Court and presents five issues, as follows:

1. Was the Appellant denied due process as a result of counsel for Appellee having chambers conferences with the trier of fact in the absence of Appellant?

2. Did the failure of counsel for Appellee to abide by the Court's oral ruling and submission of an order contrary to the Court's findings amount to an abuse of process?

3. Was the decision to award custody to the mother gender-biased and contrary to the best interest of the child?

4. Did the Court evaluate the criteria outlined in the statute in awarding indefinite alimony to the Appellee or was the decision contrary to law?

5. Did the Appellee contribute to the accumulation of marital assets so as to justify a monetary award?

We shall vacate the child support order, the earnings withholding order, and the monetary award and remand for further proceedings with respect to those issues. We shall reverse with respect to the indefinite alimony award but remand for further proceedings with respect to rehabilitative alimony. We shall affirm the judgment in all other respects. As we discuss the issues, we shall discuss the relevant facts.

## Discussion

### 1.

Appellant contends that he was denied due process because counsel for appellee engaged in ex parte communications with the trial judge after the trial and before the entry of final judgment. The case was tried on November 24, 1998, and January 29, 1999. At the conclusion of the trial on January 29, the trial judge indicated that he would apply the child support guidelines and would award child support in favor of appellee in the amount of $664 per month. The court found that appellant's gross income was $5,791 per month, and appellee's gross income was $828 per month. The order entered on March 22, 1999, however, awarded child support in the amount of $976 per month. Appellant contends that the increase was as a result of ex parte communications between appellee's counsel and the court and that this constituted a denial of due process.

Additionally, at the conclusion of the trial, the trial judge stated that he would not enter an earnings withholding order without appellant's consent. The fact that such an order was later entered, according to appellant, implies that it was as a result of ex parte communications with appellee's counsel. Finally, according to appellant, regardless of whether such communications had anything to do with the terms of the

judgment actually entered, the entire judgment should be vacated and the matter retried because such communications taint the judicial process.

Appellee asserts that, following the trial and while the proposed order was being prepared, a problem arose because, in appellee's view, the court had inadvertently failed to consider appellee's monthly daycare expense and appellant's monthly health care expense. According to appellee, her counsel called appellant, who was representing himself and who had represented himself at trial, and described the need to see the judge to clarify the situation. Appellee further asserts that appellant was advised with respect to the date and time for a meeting with the judge but did not attend. A copy of the proposed judgment was sent to appellant at least a week before the judgment was actually entered, and appellant did not respond before or after it was entered. Finally, appellee points out that appellant, even now, does not take issue with the substance of the change or clarification; instead, he attacks the ex parte communication.

Appellant asserts that he did not know of or acquiesce in the ex parte contact with the trial judge. He states that, when contacted, he asked that the issue be handled by conference call with both parties present or, if that was not acceptable, that the meeting with the judge be scheduled at a time acceptable to appellant.

■ While we understand the need to deal with matters expeditiously and recognize that appellant may have contributed to the error, we agree that appellant should have a further opportunity to be heard. Under circumstances such as those existing in this case, when a party believes the trial court has committed or is about to commit an error, all parties must be given an opportunity to be heard. We recognize that such matters may sometimes be handled informally, assuming proper notice. The better practice—especially without the consent of all parties—is to deal with such matters formally, by pleading or on the record, with all parties present or having been given a reasonable opportunity to be present. In

this case, appellant should have a reasonable opportunity to argue that the amount of child support awarded was in error and that the earnings withholding order was entered in error.

We hasten to add that we have insufficient information to determine whether there was error in the amount of child support or the entry of an earnings withholding order. The court may arrive at the same result after remand; it cannot do so, however, without affording an opportunity to be heard. We are limiting this holding to the terms of the child support order and the propriety of an earnings withholding order and, for the reasons stated, we are vacating those two orders.

Appellant also argues that, at the December 24, 1998, hearing, the trial court admitted into evidence a report prepared by an individual who had performed a family evaluation with respect to the custody issue. Appellant contends that he had subpoenaed the individual to testify, but the individual did not appear, and the trial court failed to enforce the subpoena.

It is not clear what specific argument the appellant is making with respect to the report, but we fail to perceive any deprivation of due process. Our review of the record indicates that appellant never requested the court to take any action with respect to the subpoena. With respect to admission of the report, the only objection was appellant's assertion that the notes which he made of his sessions with the individual contradicted some of the contents of the report. That fact might affect the weight of the report but in and of itself does not make it inadmissible and does not constitute grounds for reversal. The report was admitted as a "court exhibit," and both parties were permitted to testify, or to present other evidence, consistent or inconsistent with its contents. Perhaps more could have been done to meet appellant's present objection, but a trial judge has wide discretion with respect to the admission of evidence. The information was before the court, the parties were permitted to comment on it, and there was no specific request for relief not granted. We perceive no abuse of discretion in this instance.

## 2.

Appellant contends that ex parte contacts by appellee's counsel with the trial court must have been initiated with the intent to obtain a result contrary to law, and that this constituted an abuse of process.

■ "[A]buse of process is concerned with the improper use of criminal or civil process in a manner not contemplated by law after it has been issued...." *Walker v. American Security & Trust Co.*, 237 Md. 80, 87, 205 A.2d 302 (1964) (citations omitted). Based on our disposition of the first issue, this issue is moot. Moreover, there is no evidence of abuse of process.

## 3.

■ Appellant states that there "appears" to be no basis for the award of custody to appellee other than her gender, which is an impermissible basis. Appellant states that the evidence showed that appellee was unfamiliar with the health problems of their child and presented a less desirable child-rearing environment than that of appellant. Additionally, appellant notes that the court expressly recognized that appellant loved his child and was a valuable resource for his child. Consequently, appellant asserts that the court must have "*sub silentio* accepted the tender years presumption for a four-year old child."

We do not read the record in that manner. There was evidence indicating that, while neither parent was perfect, either parent was a fit parent to care for the child. Both parties claimed verbal and physical abuse by the other, and each claimed that the other had not cared for the child properly on certain occasions. On the other hand, the evidence indicated that the child was normal and functioning well, and that appellee had been the primary custodian and caretaker for a significant period of time prior to trial. The court explained that because the parties could not cooperate, joint custody was not realistic. It then awarded custody to appellee because the child was functioning well, citing consistency of environment as a primary reason. Contrary to the

implication argued by appellant, the trial judge did not find that appellant was an unfit parent, but merely that, in weighing the evidence and balancing the considerations, the child's interests were better served with custody awarded to appellee and liberal visitation rights awarded to appellant. We find no indication of gender bias in the record; such bias is simply an assumption made by appellant. The trial court's findings were not clearly erroneous and its conclusion was not an abuse of discretion.

### 4.

Appellant contends that the trial court erred in awarding indefinite alimony. Before discussing the issue in this case, we shall review the historical background to the present state of the law.

 Prior to 1980, the principal function of alimony was to maintain the recipient spouse's standard of living that existed during the marriage. Thus, courts frequently awarded alimony for the joint lives of the parties or until the recipient spouse remarried, subject to modification upon a material change in circumstances. *See Blaine v. Blaine,* 336 Md. 49, 69, 646 A.2d 413 (1994). In 1980, the alimony statute was changed by the Legislature to make the principal purpose of alimony rehabilitative, *i.e.,* to support the recipient spouse until he or she became self-supporting. *See Holston v. Holston,* 58 Md.App. 308, 321, 473 A.2d 459 (1984). In cases where it is either impractical for the dependent spouse to become self-supporting, or in cases where the dependent spouse will become self-supporting but still a gross inequity will exist, a court may award alimony for an indefinite period. *See Blaine,* 336 Md. at 70, 646 A.2d 413.

In the words of the statute, a party may receive indefinite alimony if the court finds "due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress toward becoming self-supporting," Md.Code, Fam. Law § 11–106(c)(1) (1999), or "even after the party seeking alimony will have made as much

progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate." *Id.* at (c)(2).

The law, however, favors rehabilitative alimony over indefinite alimony. *Tracey v. Tracey,* 328 Md. 380, 391, 614 A.2d 590 (1992). An alimony award should reflect the desirability of each spouse becoming self-supporting and the undesirability of alimony as a lifetime pension. Thus, indefinite alimony should be awarded only in exceptional circumstances. *Turrisi v. Sanzaro,* 308 Md. 515, 527, 520 A.2d 1080 (1987).

Before ascertaining whether indefinite alimony should be awarded under subsection (c), a court must consider the factors necessary for a fair and equitable award, pursuant to subsection (b), including:

(1) the ability of the party seeking alimony to be wholly or partly self-supporting;

(2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;

(3) the standard of living that the parties established during their marriage;

(4) the duration of the marriage;

(5) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(6) the circumstances that contributed to the estrangement of the parties;

(7) the age of each party;

(8) the physical and mental condition of each party;

(9) the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony;

(10) any agreement between the parties;

(11) the financial needs and financial resources of each party, including:

(i) all income and assets, including property that does not produce income;

(ii) any award made under §§ 8–205 and 8–208 of this article;

(iii) the nature and amount of the financial obligations of each party; and

(iv) the right of each party to receive retirement benefits; and

(12) whether the award would cause a spouse who is a resident of a related institution as defined in § 19–301 of the Health–General Article and from whom alimony is sought to become eligible for medical assistance earlier than would otherwise occur.

Md.Code, Fam. Law § 11–106(b) (1999).

■■ As the prefatory language in subsection (b) makes plain, the court is not restricted to a consideration of the factors that are expressly listed. The fact that the list of factors in subsection (b) is not all-inclusive does not relieve the court from examining the relevant ones. Although the court is not required to use a formal checklist, the court must demonstrate consideration of all necessary factors. *Doser v. Doser,* 106 Md.App. 329, 356, 664 A.2d 453 (1995); *Hollander v. Hollander,* 89 Md.App. 156, 176, 597 A.2d 1012 (1991).

■■■ A trial court's finding of unconscionable disparity under subsection (c) is a question of fact, and we review it under the clearly erroneous standard contained in Md. Rule 8–131(c). Additionally, a trial court has broad discretion in making an award of alimony, and a decision whether to award it will not be disturbed unless the court abused its discretion.

With this background, we turn to the facts of this case. The record reveals that appellant was born in the former Soviet Union and came to the United States in 1978. Thereafter, he earned a doctorate degree in theoretical nuclear physics and, during at least some of the relevant time period, was employed by the Federal Government. Appellant met appellee, a Jamaican resident and presumably a Jamaican citizen, in 1992 or 1993, while he was on a trip to Jamaica. Appellant described appellee as poor and surviving by operating a small

restaurant. He also testified that he thought she had talent as a singer and that she was "worldly" and "sophisticated." Thereafter, at his invitation, appellee came to the United States, and they lived together. After appellee became pregnant, the parties, in December 1993, were married.

Prior to the marriage, appellant owned improved property located in Beltsville and improved property located in Riverdale. The Beltsville property was owned by appellant individually, and the Riverdale property was jointly owned by appellant and his brother. These properties were rented. Appellant also founded two different business enterprises during the marriage, both of which failed. One business was a motorcycle rental business in Jamaica, and the other was a hotdog stand in Maryland.

The parties disagreed with respect to appellee's contributions during the marriage. Appellant testified that appellee lacked drive, failed to seek and obtain employment, and contributed nothing to the marriage. Appellee testified that, in addition to taking care of their child, she worked outside of the home. She testified that, from time to time, she did some housecleaning, cleaned appellant's properties between tenants, worked as a housekeeper at a hotel, worked at the hotdog stand, and worked as a server in restaurants. The periods of time involved are unclear. Appellee also testified that she provided some assistance with respect to the motorcycle business in Jamaica. It is unclear what the involvement in the motorcycle business consisted of other than to bring some "papers" home after a visit to Jamaica after the business ceased operations.

Appellee now enjoys "permanent resident" status with the Federal Immigration and Naturalization Service. Appellee began taking classes at Charles County Community College in 1997–1998, and at the time of the trial, she was taking classes and working part-time as a "student accountant." At the time of trial, appellant was 43 years old and appellee was 28 years old.

In closing argument, appellee's counsel asked for an award of rehabilitative alimony until such time as appellee finished school and could "get on her feet." Despite that request, the court awarded indefinite alimony. The court opined that appellee probably would become self-supporting, although it did not opine when that would occur. The court went on to state, however, that when she did become self-supporting, the standard of living of the two parties would be unconscionably disparate.

The trial court considered the factors contained in Section 11–106(b) of the Family Law Article. The court found that appellee would become self-supporting, *id.* at (b)(1) & (2); that the standard of living of the parties during the marriage was primarily as a result of appellant's income, *id.* at (b)(3); recognized the short duration of the marriage, *id.* at (b)(4); and discussed the contributions of each party to the well-being of the family, *id.* at (b)(5). In the latter connection, the court made no finding other than to state that "perhaps there was more [appellee] could have done than she did." Additionally, the court considered the circumstances that contributed to the estrangement of the parties, *id.* at (b)(6). The award of divorce was based on voluntary separation, and the court made no particular finding with respect to estrangement but did state that it appeared that the parties, at the inception of the relationship, were not in full agreement "about what were going to be the rules when they started living together." The court also considered the age of the parties (ages 28 and 43), *id.* at (b)(7); found that neither party was limited by any physical or mental condition, *id.* at (b)(8); and considered the financial needs and resources of each party, *id.* at (b)(9) & (11). As previously mentioned, the court found that appellee's situation would improve and that she would become self-supporting, but also found that, at the point in time when she would become self-supporting, it was likely that their standards of living would be disparate and that the disparity would be unconscionable.

 We conclude that the trial court erred with respect to the award of indefinite alimony. Section 11–106(c) of the Family Law Article requires a finding, under subsection (1), as to whether a party can make substantial progress toward becoming self-supporting; if not, that finding may justify a conclusion that alimony be indefinite. If a court projects that a party will become self-supporting, subsection (2) provides that, if and when a party makes as much progress toward becoming self-supporting as can reasonably be expected, an award of indefinite alimony may still be justified if the standards of living will be unconscionably disparate. In other words, subsection (2) requires a projection into the future, based on the evidence, beyond the point in time when a party may be expected to become self-supporting. It requires a projection to the point when maximum progress can reasonably be expected. *See Blaine,* 336 Md. at 75, 646 A.2d 413.

In the case before us, the court made no such finding. The only finding was that, at the point in time when appellee would become self-supporting, the standards of living of the parties would be unconscionably disparate.

We do not remand for an additional finding, however, because the evidence would not support an award of indefinite alimony. There is insufficient evidence to support a finding that the parties' standard of living will be significantly disparate when appellee makes as much progress as can reasonably be expected. There is no evidence from which one could project to that point in time, based on reasonable foreseeability.

 Additionally,

[i]t is plain that the existence of a significant disparity in the parties' standards of living is not enough, in itself, to warrant the indefinite extension of alimony to the recipient spouse. While the mathematical comparison of the incomes of the parties is the starting point of the analysis, it is never conclusive. As the statute provides, the disparity must be "unconscionable," a determination which requires the application of equitable considerations on a case-by-case basis,

consistent with the trial court's broad discretion in determining an appropriate award.

*Blaine,* 336 Md. at 71–72, 646 A.2d 413. The greater the disparity, the more likely that it will be found to be unconscionable, other factors remaining equal.

This was a marriage of relatively short duration, approximately five years, with the parties living together two years prior to separation. Appellant was 43 years old, and appellee was 28 years old at the time of trial. Appellee enjoys normal health and is pursuing further education.

As mentioned previously, with the passage in 1980 of Maryland's alimony act, the principal function of alimony shifted from maintenance of the recipient spouse's standard of living to rehabilitation. *See Turrisi v. Sanzaro,* 308 Md. 515, 524, 520 A.2d 1080 (1987) (quoting 1980 Report of the Governor's Commission on Domestic Relations Laws at 2). The "standard of living that the parties established during the marriage," Md.Code, Fam. Law § 11–106(b)(3), is an equitable factor that is especially relevant to a request for indefinite alimony under section 11–106(c)(2) of the Family Law Article. Whether a disparity in the party's standard of living after divorce is unconscionable must be judged, to some extent, against the standard of living *established* by the parties while they were married. On the other hand, even after the dependent spouse has reached the maximum level of self-sufficiency, if the difference in the standards of living of the former spouses would be unconscionable, after considering all relevant factors, including a consideration of whether the standard was achieved by joint efforts, both monetary and nonmonetary, a court may correct that gross inequity by an award of indefinite alimony.

In the majority of unconscionable disparity cases in which awards of indefinite alimony have been affirmed or denials of awards of indefinite alimony have been reversed for abuse of discretion, the standard of living that the parties experienced during the marriage was not one that either had experienced before it, and it was established over time during

the marriage, with joint contributions, often with one spouse working and the other attending or raising the children and, therefore, out of the workforce. The standard of living of each party prior to the marriage is a relevant consideration. Because a court is required to consider each and every relevant factor, a gross disparity with respect to standards of living after divorce might not be justified when the joint enterprise of marriage produced the high standard of living enjoyed by the parties during their marriage, but it might be justified when the disparity in the standard of living pre-existed the marriage. We make it clear, however, that all factors relevant to whether unconscionable disparity exists must be considered.

When the evidence supports an award of alimony under subsection (b), the court should consider whether the evidence supports an award of indefinite alimony under (c)(1). If the evidence supports a finding that the party seeking alimony cannot be expected to make substantial progress toward becoming self-supporting, indefinite alimony may be appropriate. If the party can make substantial progress, the court should determine under (c)(2) if, when maximum progress is achieved, in terms of reasonable foreseeability, whether the standards of living will be unconscionably disparate.

Alimony should aid and provide an incentive for rehabilitation. Only if the evidence justifies a conclusion that it will fail in that regard, or nevertheless, after as much progress as is practicable, the result will be an unconscionable disparity, should indefinite alimony be awarded.

There is insufficient evidence in this case upon which to base an award of indefinite alimony. Consequently, if alimony were to be awarded, it should have been rehabilitative alimony, *i.e.,* for a definite term, subject to review at a future point in time on petition of a party and a showing of a change in circumstances. If, at that time, there is sufficient evidence to justify an award of indefinite alimony, a court may award it. *See* Md.Code, Fam. Law § 11–107; *Blaine,* 336 Md. at 70, 646 A.2d 413.

5.

Appellant contends that the trial court erred in making a monetary award to appellee because there was no evidence that appellee contributed to the accumulation of marital wealth. Appellee contends that there was evidence that she worked at appellant's hotdog stand, assisted with appellant's rental properties, and that she also worked as a housekeeper.

Prior to the marriage, appellant owned a house in Beltsville, which he acquired in 1992, and owned a house in Riverdale with his brother, which he acquired in 1987 or 1988. The trial judge found that, during the marriage, the equity in those two houses increased by $5,500, apparently based on a decrease in the mortgage amount as the result of payments made during the marriage.

The court also found that appellant had an interest in a thrift plan and that the marital portion of that was $47,000. The court, without explanation as to the amount, entered a monetary award in favor of appellee in the amount of $20,000.

In view of our disposition of the alimony claim, and because the issues of alimony and monetary award are interrelated, we vacate the monetary award.

On remand, the court should determine an appropriate amount of child support, an appropriate amount and duration for rehabilitative alimony, whether an earnings withholding order should be entered, and finally, whether a monetary award is appropriate and, if so, in what amount. With respect to the latter, the court should consider the factors set forth in Section 8–205(b) of the Family Law Article.

**JUDGMENT WITH RESPECT TO ALIMONY, EARNINGS WITHHOLDING, CHILD SUPPORT, AND MONETARY AWARD VACATED; JUDGMENT OTHERWISE AFFIRMED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**