703 A.2d 850

John **GALLAGHER**

v.

**Joan GALLAGHER (Levine).**

No. 498, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Dec. 1, 1997.

Reconsideration Denied Jan. 27, 1998.

568

570

George D. Bogris, Sabrina Wills and Howell, Gately, Whitney & Carter, LLP, on the brief, Towson, for Appellant.

Andre' R. Weitzman and Steven J. Potter, on the brief, Baltimore, for Appellee.

Submitted before CATHELL, DAVIS and SONNER, JJ.

CATHELL, Judge.

John Gallagher appeals from a judgment of the Circuit Court for Baltimore County that granted Joan Gallagher, appellee, an absolute divorce, awarded her indefinite alimony, granted her a marital award, and awarded her attorneys' fees. Mr. Gallagher's appeal raises issues regarding the award of indefinite alimony, monetary award, and attorneys' fees. We shall affirm the judgment of the trial court.

## I. THE FACTS

Appellant and appellee were married in 1987. At the time of their marriage, appellee had been married twice before and appellant had never been married. Appellant was a professional gambler and investor, and appellee worked as a secretary and sales clerk.

While married, appellant continued to work as a professional gambler and investor. There also was testimony that appellant acted as a "facilitator," one who assists another in placing bets on sporting events. Appellant testified that he made approximately $50,000 per year from personal bets and as a facilitator. He stated he expected a decrease in his income because he would no longer be acting as a "facilitator," as appellee's counsel had informed him that such conduct was illegal. Appellee continued to work during the marriage and,

at the time of the divorce, had a part-time job from which she earned $12,827 per year.

Appellee introduced, over appellant's objection, the testimony of Regis Burke, a Certified Public Accountant. Mr. Burke was offered as an expert witness in the areas of taxation, accounting, finance, and asset valuation and was accepted as an expert by the court. Appellant never objected to Mr. Burke's credentials as an expert witness; appellee's objection related solely to the summaries that were prepared by the expert witness from the financial documentation and testimony given by appellant.

Mr. Burke testified extensively regarding the summaries he had prepared relative to appellant's cash flow and assets. He testified that appellant "spent well in excess of what he reported as income in each given year." For example, Mr. Burke testified that in 1995, appellant spent approximately $31,375 more than his reported income. Mr. Burke testified that some of his assets, however, were cashed in during that time period and that this would have given appellant additional liquidity. Mr. Burke testified that this added liquidity could have been used to pay for the personal expenditures that exceeded his income, but he could not make a determination as to "what proportion was spent on living expenses and what proportion was rolled over into an investment account."

In the court's memorandum opinion, it granted appellee an absolute divorce on the grounds of adultery. The court also determined the parties' marital and non-marital property and valued that property. The court determined the parties' respective incomes and ultimately made a monetary award. It noted it was difficult "to determine precisely Mr. Gallagher's income given the nature of his business" and that "[s]everal exhibits were introduced in an attempt to persuade the Court that Mr. Gallagher's income exceeds that which is reported on his tax returns." The court also stated:

Mr. Gallagher testified that in the past, his personal wagering produced a $50,000 per year net income, but presently, the amount produced is only $25,000. He further

testified that his present income from "facilitating" is $30,-000 per year.

. . . .

The Court is persuaded that Mr. Gallagher has net income from personal wagering and "facilitating" in excess of $80,000 per year.

Mr. Gallagher is approaching social security benefits eligibility. However, considering the nature of his business, it is not likely he will be forced to retire any time soon, barring any "unforseen legal intervention."

Mr. Gallagher lists his monthly personal living expenditures at $3630.00. Ms. Gallagher attacks this figure, arguing that it is artificially low to conform to his grossly understated earnings. [Footnote omitted.]

After considering the factors set forth in section 8–205 of the Family Law Article, the court granted appellee a monetary award of $175,000. In making this award, the court noted: 1) the "marriage came to an end because of the adultery committed by Mr. Gallagher;" 2) "Ms. Gallagher's physical health is more limiting than Mr. Gallagher's physical health;" 3) "[w]hen the parties lived together, Mr. Gallagher was the major monetary contributor while Ms. Gallagher used her earnings for her personal needs and desires;" 4) Ms. Gallagher relinquished her full-time employment at the insistence of Mr. Gallagher; and 5) "[b]oth parties made some nonmonetary contributions, mainly, the important contribution of companionship."

The trial court also awarded appellee indefinite alimony in the amount of $1,500 per month. In doing so, the court acknowledged that both parties were accustomed to a high standard of living. The court also noted that, following the monetary award, appellee would have $380,778 in assets while Mr. Gallagher would hold assets totaling $267,117. It noted appellee's income was $19,937 and her investment income would increase due to the monetary award while appellant's would decline. The trial court further stated: "However, there is every reason to believe, and the court so finds, that

Mr. Gallagher's earned income from his business will continue to be substantially greater than that of Ms. Gallagher." It also found that the "respective living standards of the parties will be unconscionably disparate."

Finally, the court granted appellee attorneys' fees of $20,-684.95. It specified that appellee had substantial justification for prosecuting the proceeding and noted the financial resources of the parties.

At a later hearing on April 23, 1997, after the judgment of divorce was entered and this appeal taken, appellee's counsel requested that the court reduce the marital award and counsel fees to judgment. Appellant's counsel asserted that the court lacked jurisdiction to do so because he had filed an appeal to this Court and such a filing had divested the trial court of jurisdiction. The court reduced the marital award to judgment, finding that doing so was collateral to the initial judgment which was appealed.

Appellant presents three questions on appeal:

I. Did the circuit court err in making a monetary award and granting indefinite alimony?

II. Did the circuit court err in granting an award of attorney fees and other costs to Ms. Levine [appellee's former counsel]?

III. Did the circuit court have jurisdiction to reduce the monetary award to judgment?

## II. DISCUSSION

In the resolution of this case, we shall examine A) the monetary award; B) the award of alimony; C) the award of counsel fees; and D) the reduction of the monetary award and counsel fees to judgment.

### A. Monetary Award

Appellant's primary assignment of error concerning the monetary award relates to the trial court's determination that his income was approximately $80,000 per year. He gives

multiple reasons as to why the trial court erred in its determination of his then current income and argues that this error resulted in an exorbitant monetary award.

We note initially that appellant has not raised any contention as to the characterization and valuation of the marital property. His only argument relates to his income.

■ Before addressing appellant's various arguments, we shall state the law applicable to the granting of a monetary award. Maryland law requires that the trial court undertake a three-step process prior to granting a monetary award:

> (1) the trial court must initially characterize all property owned by the parties, however titled, as either marital or nonmarital; (2) the court shall then determine the value of all marital property; and, finally, (3) the court may then make a monetary award as an adjustment of the parties' equities and rights in the marital property.

*Strauss v. Strauss*, 101 Md.App. 490, 501, 647 A.2d 818 (1994) (citations omitted), *cert. denied*, 337 Md. 90, 651 A.2d 855 (1995); *see also* Md.Code (1984, 1991 Repl.Vol, 1997 Supp.), §§ 8–203 to 8–205 of the Family Law Article (FL). With respect to this last step in the process, the court must consider the following factors:

> (1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

> (2) the value of all property interests of each party;

> (3) the economic circumstances of each party at the time the award is to be made;

> (4) the circumstances that contributed to the estrangement of the parties;

> (5) the duration of the marriage;

> (6) the age of each party;

> (7) the physical and mental condition of each party;

> (8) how and when specific marital property or interest in the pension, retirement, profit sharing, or deferred compensation plan, was acquired, including the effort expended by each party in accumulating the marital property or the

interest in the pension, retirement, profit sharing, or deferred compensation plan, or both;

(9) the contribution by either party of property described in § 8–201(e)(3) of this subtitle to the acquisition of real property held by the parties as tenants by the entirety;

(10) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home; and

(11) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in the pension, retirement, profit sharing, or deferred compensation plan, or both.

FL § 8–205(b).

 An appellate court, when an action has been tried without a jury, "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Md.Rule 8–131(c).

The decision whether to grant a monetary award is generally within the sound discretion of the trial court. Nevertheless, even with respect to a discretionary matter, a trial court must exercise its discretion in accordance with correct legal standards.

. . . .

It is important that courts not lose sight of th[e] history and purpose [of the equitable distribution statute] when making decisions about marital property. The "function [of the monetary award] is to provide a means for the adjustment of inequities that may result from distribution of certain property in accordance with the dictates of title."

*Alston v. Alston,* 331 Md. 496, 504–06, 629 A.2d 70 (1993) (citations omitted) (footnotes omitted) (some alterations in original).

We shall next examine appellant's specific allegations of error regarding the trial court's grant of a monetary award.

We note all of appellant's assertions of error relate to his and appellee's income, factors two and three of section 8–205(b) of the Family Law Article.

1. Overestimation of Income Based on Condominium Sale

Appellant argues the court erred in calculating his income because it failed to consider that the sale of his West Palm beach condominium resulted in a loss. In support of this argument, appellant notes the court stated: "Plaintiff exhibit 23 reveals that in 1995, he had a total income of $48,633 and net proceeds from the sale of stock in the amount of $117,702." He argues that all of the $117,702 did not come from the sale of stock and that some of that amount came from the sale of his West Palm Beach home. The sale of this home, however, created a loss, as reflected on his tax return.

We believe that whether the $117,702 came from the sale of stock or from the sale of the condominium is irrelevant. While the court may have misspoken as to the amount and the nature of net proceeds that resulted from the two sales, it is clear the court did not consider these proceeds in setting appellant's income. In making a determination as to appellant's income, the court merely stated it was persuaded "that Mr. Gallagher has net income from personal wagering and 'facilitating' in excess of $80,000 per year." The trial court did not refer to any sales of assets in setting appellant's then current income. Accordingly, any argument relating to the $117,702 is not relative to the court's determination of income. Additionally, appellant alleges no error in regard to his assets and characterization of those assets as marital or nonmarital property.

2. Overestimation of income based on stock sales

Appellant makes similar arguments as those made above relative to the sale of the condominium. He asserts the court erred in stating that appellant had net proceeds from the sale of stock in the amount of $117,702 because this amount resulted from both the sale of stock and the sale of the condominium. For the reasons noted above, we need not

address this argument. As we stated, the court did not consider the $117,702 in setting appellant's income.

### 3. Testimony of Mr. Burke

Appellant next challenges the testimony of appellee's expert, Mr. Burke. Appellant presents a two-fold argument; first he asserts that Mr. Burke did not testify as an expert witness and second, that Mr. Burke's testimony was speculative.

As initially noted, appellant never objected at trial to Mr. Burke's qualifications. In fact, appellant did not elect to voir dire the witness prior to his testimony. Appellant's sole objection at trial related to the introduction of certain reports prepared by the expert that were used to explain the assets, cash flow, and income of appellant. As to these reports, appellant's counsel argued they were inadmissible because they had not been presented to him prior to trial; appellant did not challenge the expert witness' testimony. Accordingly, appellant's argument is not preserved for our review. *See* Md.Rule 8–131(a). Nevertheless, appellant's arguments are without merit. We explain.

As to his first argument, appellant asserts that the trial court stated: " '[t]urns out [Mr. Burke] is *only a fact witness. He hasn't become one who gave an opinion as an expert[.]'* " Appellant directs this Court to page 860 of the extract for this statement. We have been unable to discern whether this statement was made by the trial court because the extract does not contain a page 860. We believe, however, the testimony of Mr. Burke was proper expert witness testimony.

Although the court may have misstated that Mr. Burke did not testify as an expert witness, we believe his testimony was qualified as such. The numerous, complex, financial transactions in which appellant was involved required that an expert, such as a Certified Public Accountant, be consulted in order to determine the nature and extent of appellant's income and expenditures. It is clear that Mr. Burke testified as to

appellant's income and expenditures and traced certain assets held in various bank accounts. He also took certain statements and income tax records and drew from them conclusions. This is precisely what experts do. Maryland Rule 5–702 provides: "Expert testimony may be admitted ... if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." Mr. Burke's testimony clearly did so in the instant case. Accordingly, we believe Mr. Burke properly testified as an expert.

■ As to the speculative nature of Mr. Burke's testimony, the transcript clearly shows Mr. Burke was careful to draw only certain conclusions from the information he obtained. For example, Mr. Burke testified that appellant spent approximately $31,375 more than his income in 1995. The witness, however, carefully noted that he could not determine where this additional money may have come from and indicated that it could have come from proceeds that were obtained from the sale of other assets during that year. There are many other instances where the witness refused to draw speculative conclusions and indicated merely what the accounts and records showed. We do not believe that the expert's testimony was unfairly speculative. We also note that the court made no mention of this testimony when determining appellant's income. Accordingly, the trial court did not err.

### 4. Facilitating Income

■ Appellant lastly asserts, as to the monetary award, that the trial court erred in determining his income because it considered income from facilitating, an endeavor he was not engaged in at the time of the granting of the marital award.

Appellant testified that he was facilitating during the first few months of 1996. While he clearly denied facilitating at the time of the trial, the court was not required to accept his testimony. Under Maryland Rule 8–131(c), we shall "not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity

of the trial court to judge the credibility of the witnesses."
We stated in *Hollander v. Hollander*, 89 Md.App. 156, 175,
597 A.2d 1012 (1991) (quoting *Shapiro v. Chapman*, 70 Md.
App. 307, 318, 520 A.2d 1330 (1987)), that " '[t]he trier of fact
is not bound to accept the testimony of any witness even if it is
uncontradicted.' " Additionally, appellee testified that the in-
come reported on the parties' tax returns did not adequately
reflect the income appellant earned from his gambling activi-
ties. Based on all this evidence, the court did not err in
determining appellant's income or determining a marital
award was warranted.

## B. Indefinite Alimony Award

Appellant also presents numerous arguments relating to the
trial court's grant of indefinite alimony to appellee. A trial
court may grant indefinite alimony if it finds that:

(1) due to age, illness, infirmity, or disability, the party
seeking alimony cannot reasonably be expected to make
substantial progress toward becoming self-supporting; or

(2) even after the party seeking alimony will have made
as much progress toward becoming self-supporting as can
reasonably be expected, the respective standards of living of
the parties will be unconscionably disparate.

FL § 11–106(c). In order to make a fair and equitable
alimony award, the court considers:

(1) the ability of the party seeking alimony to be wholly
or partly self-supporting;

(2) the time necessary for the party seeking alimony to
gain sufficient education or training to enable that party to
find suitable employment;

(3) the standard of living that the parties established
during their marriage;

(4) the duration of the marriage;

(5) the contributions, monetary and nonmonetary, of each
party to the well-being of the family;

(6) the circumstances that contributed to the estrange-
ment of the parties;

(7) the age of each party;

(8) the physical and mental condition of each party;

(9) the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony;

(10) any agreement between the parties;

(11) the financial needs and financial resources of each party, including:

(i) all income and assets, including property that does not produce income;

(ii) any award made under §§ 8–205 and 8–208 of this article;

(iii) the nature and amount of the financial obligations of each party; and

(iv) the right of each party to receive retirement benefits; and

(12) whether the award would cause a spouse who is a resident of a related institution as defined in § 19–301 of the Health—General Article and from whom alimony is sought to become eligible for medical assistance earlier than would otherwise occur.

FL § 11–106(b).

We shall address appellant's contentions individually.

### 1. Income from Facilitating

 Appellant makes numerous interesting arguments regarding his income from facilitating as it relates to the alimony award. Appellant essentially asserts that by including the money earned from facilitating in determining his total income, the trial court has required him to continue in this illegal occupation.

Appellant misperceives the trial court's order in this case. As we noted above, section 11–106(b)(11) requires the trial court to consider the financial resources of a party before granting alimony. In the trial court's order, it attributed to appellant approximately $80,000 in income during the year.

Appellant asserts that this amount includes income from facilitating and that he has stopped this type of activity, so his income cannot be $80,000.

As we perceive the trial court's order, the court obviously believed that appellant continued facilitating despite his contentions that he no longer engaged in this type of activity. The trial court makes credibility determinations, and in this case evidently made a determination that appellant was not credible. The trial court did not require that appellant remain in this type of work; it found that appellant continued to engage in this type of activity. If appellant is able to show at a later point in time that he no longer engages in facilitating, this may constitute a circumstance allowing for a modification in the alimony award. Unfortunately for appellant, he was not able to persuade the trial court that he was not engaged in such activity at the time of trial, and it was from his current activities that the court determined appellant's income. Accordingly, the trial court did not err.

## 2. Potential Income

Appellant asserts the trial court, in its determination of the alimony award, considered his potential income, not his actual income. As we have explained above, appellant did not persuade the court that he no longer was engaged in facilitating. The court took into consideration actual income from this activity and appellant's earnings from his gambling activities. Accordingly, appellant's assertion that the court did not determine his actual income is inaccurate.

## 3. Application of § 11–106

Appellant's last assertion of error in regard to the alimony award relates to the trial court's application of section 11–106 of the Family Law Article. He asserts numerous errors in the application of the factors listed in section 11–106. Before addressing appellant's contentions, we shall examine the trial court's order in regard to the alimony award. The order provides:

The parties enjoyed a fairly high standard of living. They dined out regularly and traveled frequently. Considering the monetary award made to Ms. Gallagher, she will have assets totaling $380,778. Mr. Gallagher will have assets of $267,117.

Ms. Gallagher's 1995 total income was $19,937. Her investment income will increase by virtue of the monetary award. On the other hand, Mr. Gallagher's investment income will decline. However, there is every reason to believe, and the court so finds, that Mr. Gallagher's earned income from his business will continue to be substantially greater than that of Ms. Gallagher.

The court is persuaded that Ms. Gallagher can again become employed but because of her health, age, education level and lack of employment skills beyond sales and secretarial, she will not have an income level sufficient to maintain a standard of living similar to that enjoyed during the marriage. Under these circumstances, the court is persuaded that the respective living standards of the parties will be unconscionably disparate.

There can be no doubt that Mr. Gallagher can meet the needs of Ms. Gallagher from his business. The Court has determined his income to be in excess of $80,000 per year, more than that is only limited by his efforts.

Therefore, indefinite alimony is awarded in the amount of $1,500 per month. [Footnotes omitted.]

### a. Presumption against indefinite alimony

■ Appellant correctly notes that the law favors rehabilitative alimony over indefinite alimony. *See Tracey v. Tracey,* 328 Md. 380, 391, 614 A.2d 590 (1992). In *Tracey,* the Court of Appeals stated:

[T]he purpose of alimony is not to provide a lifetime pension, but where practicable to ease the transition for the parties from the joint married state to their new status as single people living apart.... The concept of alimony as a life-long support enabling the dependent spouse to maintain

an accustomed standard of living has largely been superseded by the view that the dependent spouse should be required to become self-supporting, even though that might result in a reduced standard of living.

328 Md. at 391, 614 A.2d 590.

The court, however, may award indefinite alimony if

(1) due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress toward becoming self-supporting; or

(2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate.

FL § 11–106(c).

It is clear the court made both of the findings contained in section 11–106(c), even though only one such finding is required in order to grant indefinite alimony. The court was "persuaded that Ms. Gallagher can again become employed but because of her health, age, education level and lack of employment skills beyond sales and secretarial, she will not have an income level sufficient to maintain a standard of living similar to that enjoyed during the marriage." In addition, the court noted that despite the marital award, "the respective living standards of the parties will be unconscionably disparate." We cannot say that these determinations were clearly erroneous. Accordingly, the court had authority to award indefinite alimony based on its findings and did not err.

### b. Appellee's Income

Appellant next asserts the trial court erred because it "never determined with any specificity [appellee's] expected future earnings, and failed altogether to quantify her expected future income from other sources."

With respect to appellee's income level, the court explicitly noted that appellee lacked marketable employment skills and found that the most she probably could earn was the

same amount she earned during the previous year. This amount was found to be approximately $12,827 in wages and investment income of approximately $7,110 for a total of $19,937. We believe this finding was sufficiently specific with respect to appellee's income.

■ Appellant also argues the court failed to quantify appellee's future earnings, especially in light of the marital award granted by the court. He cites *Newman v. Newman*, 71 Md.App. 670, 527 A.2d 61 (1987), and *Rosenberg v. Rosenberg*, 64 Md.App. 487, 497 A.2d 485, *cert. denied*, 305 Md. 107, 501 A.2d 845 (1985), in support of his contention. More specifically, appellant faults the trial court for failing to assign a numerical value to any income that may be generated from the marital award.

We do not believe *Newman* and *Rosenberg* require that the trial court assign a numerical value to income that may be earned from a marital award. In both of those cases, the trial court failed to consider any income that could have been generated by the marital award in setting the amount of alimony. In the case *sub judice*, the trial court clearly considered the effect of the marital award on appellee's income. It stated: "Her investment income will increase by virtue of the monetary award. On the other hand, Mr. Gallagher's investment income will decline." Accordingly, appellant's claim is without merit as the court clearly addressed the effect of the monetary award prior to granting alimony to appellee.

### c. Other § 11–106(b) Factors

■ In addition to the monetary factors discussed above, appellant asserts the court failed to consider other factors such as the length of marriage and other equitable considerations in granting appellee indefinite alimony. We stated in *Hollander*, 89 Md.App. at 176, 597 A.2d 1012:

We cannot reverse the judgment of the trial judge unless we conclude his findings were clearly erroneous or that in awarding alimony, he abused his discretion.

The trial judge ... is not required to use a formal "checklist" but may declare an award for alimony in any way that shows consideration of the necessary factors.

The trial court, in its written memorandum, clearly considered all of the relevant factors in section 11–106(b) of the Family Law Article in granting the indefinite alimony award. We cannot say it abused its discretion.

## C. Counsel Fees

Section 11–110 of the Family Law Article gives the court the authority to award "reasonable and necessary" expenses associated with a proceeding for alimony. Before awarding a party expenses, the court must consider "(1) the financial resources and financial needs of both parties; and (2) whether there was substantial justification for prosecuting or defending the proceeding." FL § 11–110(c).

In its memorandum, the trial court, granting appellee reasonable and necessary expenses, stated:

Clearly, there was substantial justification for Ms. Gallagher to prosecute this proceeding. She met with considerable resistance along the way from Mr. Gallagher. She has proven her claim of adultery and persuaded the court on the issue of monetary award and alimony.

The court has considered the testimony of the parties and has examined the exhibits, particularly Plaintiff exhibit 18. The work and expenses required to properly prosecute this case were reasonably necessary. The fees charged by the lawyers and other professionals are reasonable for the work done.

The court again considers the financial resources of the parties to determine how much of these expenses can be reasonably born[e] by each party. Considering the monetary award, the award of alimony, the assets of the parties, and the respective income of the parties, Mr. Gallagher is ordered to pay the sum of $25,000 toward Ms. Gallagher's expenses.

Appellant asserts that many of the fees associated with the prosecution of this case by appellee were unjustified. He notes the deposition of Ms. Kelly Carney, appellant's alleged mistress, the private investigator fees, the testimony of Mr. Burke, appellee's expert financial witness, and the counsel fees of appellee's attorney.

As is clear from the trial court's memorandum opinion, the court considered the two requisite factors of section 11–110(c) of the Family Law Article. Appellant's only argument relates to the reasonableness of such fees. As to the deposition of Ms. Carney and the investigator fees, the information gathered from these sources, although much was not used at trial, was necessary to establish appellee's ground for divorce. As we indicated previously in this opinion, Mr. Burke's expert testimony was relevant and helpful in determining appellant's assets, income, and expenditures. Finally, as to the counsel fees, we stated in *Hollander* that "a detailed list of expenses is not necessary. 'A chancellor may well be able to appraise the value of an attorney's services on the basis of the record and his own knowledge and experience without an account of the number of hours spent by the attorney.' " 89 Md.App. at 177–78, 597 A.2d 1012 (quoting *Holston v. Holston,* 58 Md.App. 308, 326, 473 A.2d 459, *cert. denied,* 300 Md. 484, 479 A.2d 372 (1984)). We, therefore, conclude that the granting of expenses for the prosecution of the alimony claim properly were awarded.

### D. Reduction of Monetary Award and Fees to Judgment

Appellant's last assertion of error relates to the entry of a judgment for the monetary award in favor of appellee and for counsel fees in favor of appellee's former attorney by the circuit court during a later hearing. Appellant avers the court was without authority to reduce these amounts to judgment because he had entered a Notice of Appeal to this Court that deprived the circuit court of jurisdiction.

With respect to the monetary award, the trial court stated in its memorandum opinion and order that the amount was "payable in cash, in two equal installments, due on December

31, 1996 and February 28, 1997." In regard to the necessary fees and expenses, the court stated that "[t]he sum of $20,-684.95 is to be paid directly to Ms. Gallagher's attorney within thirty days hereof, and the balance of $4,315.05 shall be paid directly to Ms. Gallagher not later than December 31, 1996."

At an April 24, 1997 hearing, the trial court reduced the monetary award and the attorney's fees to judgment. Appellant asserts the court was without jurisdiction to do so because he had filed a notice of appeal to this Court.

Section 8–205(c) of the Family Law Article provides that "[t]he court may reduce to a judgment any monetary award made under this section, to the extent that any part of the award is due and owing." Likewise, section 11–110(f) of the Family Law Article states: "As to any amount awarded for counsel fees, the court may: (1) order that the amount awarded be paid directly to the lawyer; and (2) enter judgment in favor of the lawyer." As is clear, the trial court has the authority to reduce to judgment any monetary award due and owing and attorney's fees to be paid directly to the lawyer.

The interesting issue presented by appellant is whether the trial court, after a notice of appeal has been filed, has the authority to reduce to judgment a marital award that becomes due and owing at some point after the initial order providing for the monetary award was granted.[1]

In *McClayton v. McClayton,* 68 Md.App. 615, 515 A.2d 231 (1986), we examined the phrase "due and owing" as used in present section 8–205(c) of the Family Law Article. We stated:

> A monetary award, unlike a judgment at law, is not based upon any antecedent debt or obligation, but is a present adjustment of equities existing at the time of the award. In granting such an award, the chancellor's discretion extends

---

[1]. It seems appellant would agree that the trial court would have the authority to reduce to judgment a marital award so long as the judgment was entered prior to the notice of appeal. He is concerned only with the court reducing a monetary award to judgment after the filing of a notice of appeal.

not only to the amount of the award but also the method of payment. The entire award can be made immediately due and payable or all/or part of it can be made payable in the future. Subsection [ (c) ] of § 8–205 authorizes the court to reduce to a judgment any monetary award granted under § 8–205(a), but only "to the extent that any part of the award is due and owing."

. . . .

Senate Bill 604 (1978) originally contained a provision (§ 3–6A–05(c)) that a monetary award "*shall* constitute a judgment." That language was stricken, however, and the current language of § 8–205[ (c) ] was substituted for it. 1978 Md. Laws, ch. 794. This change indicates that the Legislature intended that only those decrees for monetary awards then due and owing in the sense of then immediately payable could be reduced to judgments under § 8–205[ (c) ].

*Id.* at 622–24, 515 A.2d 231 (citations omitted).

Although *McClayton* gives us insight as to whether an initial monetary award constitutes a final judgment, it does not answer whether the court has the authority to reduce to judgment a monetary award due and owing after a notice of appeal has been filed. Both parties cite to *Kirsner v. Edelmann*, 65 Md.App. 185, 192–93, 499 A.2d 1313 (1985), in which we stated:

It is well settled that "[a]fter an appeal has been perfected, [the appellate court] is vested with the exclusive power and jurisdiction *over the subject matter* of the proceedings, and the authority and control of the lower court with reference thereto is suspended." The lower court may act only with respect to collateral or independent matters not relating to the subject [matter] of the appeal. [Citations omitted; brackets in original].

Although the parties both agree on the applicability of this general rule, they disagree as to its effect on this case. Appellant asserts the judgment entered on April 24, 1997, was not collateral to the subject matter of the appeal. Appellee asserts that the subsequent judgment was collateral to the issues on appeal.

The subject matter of this appeal, as it relates to this issue, is the grant of the monetary award, the amount of the monetary award, and the award of litigation expenses. The later trial court proceeding and judgment did not concern the amount or the award of the monetary award, or the amount or the award of litigation expenses. The proceedings at issue involved whether appellant had paid the monetary award and litigation expenses as directed by the trial court's previous order. These amounts, not having been paid by appellant, caused a judgment to be entered against him. As we perceive this case, the subsequent reduction of the monetary award and counsel fees to judgment was a collateral matter. Accordingly, the trial court properly reduced to judgment the monetary award then due and owing and the counsel fees.

### III. CONCLUSION

We affirm the judgment of the trial court that granted appellee a monetary award, indefinite alimony, and counsel fees. We likewise affirm the trial court's reduction of the monetary award and counsel fees to judgment.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**