J-S37004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.E.H., | : | |
| | : | |
| Appellant | : | No. 3364 EDA 2017 |

Appeal from the Order Entered October 6, 2017
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): 14-12664,
PACSES # 219115003

BEFORE:   OLSON, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:                **FILED SEPTEMBER 11, 2018**

Appellant, A.E.H. ("Father"), appeals from the trial court's child support order, which was entered on October 6, 2017.  We vacate and remand.[1]

Father and K.H. ("Mother") were married on August 28, 2013 and separated on September 30, 2014.  They have one minor child, A.H. ("Child"), who was born in August 2014.  *See* Master's Report, 7/7/17, at 3; *K.H. v. A.H.*, 170 A.3d 1201 (Pa. Super. 2017) (unpublished memorandum) at 2.

On November 20, 2014, Mother filed a complaint for child support.  The initial Master held a hearing in 2015 and the Master later filed a report and proposed order, which imputed an annual earning capacity of $100,000.00 to

---

[1] As this case involves a dispute over child support payments, we have identified the parties with initials so as to protect the identity of the minor child.  We have amended the caption accordingly.

---

*   Former Justice specially assigned to the Superior Court.

Father and recommended that Father pay $2,317.00 per month in support for two children.[2] Trial Court Opinion, 7/19/16, at 1-2. Both parties filed exceptions, which the trial court granted on July 20, 2015, and the matter was remanded to the current Master.

The Master held a child support hearing on December 28, 2015 and, on February 9, 2016, the Master issued a report and proposed order. The Master's Report declared that Father had a net annual income of $75,000.00 and the proposed order recommended that Father pay $1,074.00 per month in child support. Master's Report, 2/9/16, at 6-7. Both parties again filed exceptions to the Master's Report.

Although the trial court denied the parties' exceptions, the trial court apparently did not accept the Master's conclusion that Father had a net annual income of $75,000.00. Instead, the trial court utilized Pennsylvania Rule of Civil Procedure 1910.16-2(d)(4) and imputed to Father an income equal to an earning capacity of $75,000.00. The trial court explained its reasoning as follows:

> [Mother] would have [Father's] support obligation be based upon the equivalent of his income and lavish spending habits during his drug dealing days,[3] which afforded her designer

_____

[2] The second child was not Father's biological child and it is unclear why she was included in the Master's report. **See K.H. v. A.H.**, 170 A.3d 1201 (Pa. Super. 2017) (unpublished memorandum) at 2 n.2.

[3] Father admitted that he sold drugs in the past, but claimed to have stopped doing so in 2012 after he was acquitted of attempted murder and convicted

- 2 -

shoes and clothing, whereas [Father] would have it be based upon his reported 2014 earnings from his [legal] businesses, plus rental income, or approximately $24,000. In other words, the court is requested to either calculate a support obligation based upon [Father's] continued illicit earnings, implicitly condoning same, or calculate a support obligation based upon [Father's] reported minimal income, which the Master rejected for lack of credibility, particularly since [Father's] recent spending habits exceeded those earnings.

There was no reported testimony from [Father] denying that he paid the expenses cited by [Mother] in 2014 before the parties separated, which was after he reportedly ceased his illegal activities. Therefore, imputing income based upon [Father's] recent spending history, as described by [Mother], would fairly reflect [Father's] earnings available for child support, presumably from his businesses. This would satisfy the requirements of Rule 1910.16-2(d)(4), which cites earnings history as one of the factors to be considered in setting a support obligation.

. . .

In light of the rent/mortgage paid to [Mother's] sister ($1,500), the $1,000 weekly spending money given to [Mother], a minimum of $500 per month for food and utilities (this court's estimate), $125 per month for insurance and $60 per month for [Father's] phone expense, [Father's] most recent spending habits total approximately $6,500 per month or $77,800 per year. Thus, the Master's imputed earning capacity for [Father] of $75,000 net annual income, was fairly reflective of [Father's] earnings.

Trial Court Opinion, 7/19/16, at 7-8.

Father appealed the matter to this Court. We vacated the trial court's order and remanded for a "full evidentiary hearing to determine if imputing an earning capacity is proper and what that earning capacity should be based

---

of illegal possession of a firearm. *See K.H. v. A.H.*, 170 A.3d 1201 (Pa. Super. 2017) (unpublished memorandum) at 2.

on the factors described in Rule 1910.16-2(d)(4)." ***K.H. v. A.H.***, 170 A.3d 1201 (Pa. Super. 2017) (unpublished memorandum) at 10. This Court explained:

> We disagree with the trial court[]. . . . The trial court first implies that Father is earning money from his "continued illicit earnings," but then states that Mother's description of Father's spending history "would fairly reflect his earnings available for child support, presumably from his businesses." As stated previously, the determination of earning capacity should not involve the consideration of what a party could theoretically earn, but rather the amount a party could realistically earn under the circumstances. As such, the trial court should not "presume" where income is coming from; rather, it must consider the evidence presented to determine the amount of income that Father could realistically earn under the circumstances.
>
> We find further error in the trial court's conclusion that it relied on Rule 1910.16-2(d)(4) to determine Father's earning capacity. Nothing in the record supports that conclusion.
>
> Pa.R.Civ.P. No. 1910.16–2, pertaining to the calculation of income for purposes of determining child support obligations, requires the trier of fact to determine "that a party to a support action has willfully failed to obtain or maintain appropriate employment," and then "the trier of fact may impute to that party an income equal to the party's earning capacity." Pa.R.Civ.P. 1910.16–2(d)(4). The Rule then requires that "age, education, training, health, work experience, earnings history and child care responsibilities" be considered in determining earning capacity for one full-time position. ***Id.*** Further, the Rule states: "[d]etermination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment." ***Id.***

In the instant case, the record is devoid of evidence that Father "willfully failed to obtain or maintain appropriate employment[.]" Pa.R.Civ.P. No. 1910.16–2(d)(4). Although the record does reflect that Father had, at one point, engaged in illegal activities to earn an income, that "employment" is neither "appropriate" nor in the best interest of the child. Father's assertion that he no longer deals drugs does not support any conclusion relevant to a consideration of whether he "willfully failed to obtain or maintain appropriate employment." *Id.*

In addition, even assuming *arguendo* that Father had willfully failed to obtain or maintain appropriate employment, the record reflects that the trial court's determination of Father's earning capacity was based solely on Father's spending history. The trial court had inadequate evidence from which to determine what would constitute a "reasonable work regimen" for Father, or from which to consider the relevant factors, including "age, education, training, health, work experience, earnings history and child care responsibilities[.]" *Id.*

Rule 1910.16–2(d)(4) requires a thorough inquiry into the relevant factors necessary to establish Father's true earning capacity. *See Haselrig v. Haselrig*, 840 A.2d 338, 341 (Pa. Super. 2003) ("the law in Pennsylvania clearly requires the trial court conduct a full inquiry before making a factual determination of an obligor's true earning capacity"). Here, that thorough inquiry did not occur and the record contains insufficient evidence from which to impute an earning capacity to Father based on appropriate (*i.e.* legal) employment.

Accordingly, we remand for a full evidentiary hearing to determine if imputing an earning capacity is proper and what that earning capacity should be based on the factors described in Rule 1910.16–2(d)(4).

*K.H. v. A.H.*, 170 A.3d 1201 (Pa. Super. 2017) (unpublished memorandum)

at 7-8 (internal emphasis and some internal citations omitted).

Following this Court's decision, the Master held another hearing on May

18, 2017. The trial court summarized Father's testimony during the May 18,

2017 hearing:

> At the May 18, 2017 hearing, Father, whose date of birth is January 1, 1985, testified that he was a self-employed businessman, specifically a real estate investor. While he was currently in a one-month course in real estate school, he started his own real estate business, On the Rise Productions, in 2009. The income generated from this endeavor was $7,468.00 for the year 2016, or "about" $622.00 a month. He has no other sources of income. Father has not sought any other form of employment since 2014.
>
> While Father had previously engaged in the sale of illegal controlled substances, he has maintained that he stopped that behavior after he was acquitted of attempted murder in 2012. He graduated from high school and completed three years of college. He has a driver's license. Father lives with his mother, step-father, and two siblings in Washington, D.C. He has a four-year old daughter living in Maryland for whom he pays no child support.
>
> Father traveled to California in 2017 at the expense of a friend. He testified that he stayed there for three days at the home of a friend without incurring any expenses. Other evidence of Father's access to items of value included a picture of him on New Year's Eve in which he wore a Versace belt and had paper currency sticking out of his right pocket. On March 14, 2017, Father posted on his Facebook page a photo of a Louis Vuitton bag, a purse and some perfume with the caption, "[t]his is my appreciation to my BM, that raised and take care [sic] of my daughter very well. Happy birthday." Father testified that the items were actually bought by his daughter's mother, "BM," and that the photo was deliberately posted on social media for Mother to see.

Trial Court Opinion, 12/19/17, at 2-3 (internal citations omitted).

On July 7, 2017, the Master issued another report and proposed order.

The report states:

The Master finds [Father] has not been diligent in his efforts to obtain employment, particularly since [Father] has not submitted any applications for employment since 2014.

Based on the testimony offered and in consideration of the [Father's] age, health, education, employment history and child care responsibilities, the Master concludes [Father] has a gross annual earning capacity of $50,000.

Master's Report, 7/7/17, at 9-10. Father filed exceptions, which were heard and denied by the trial court on October 6, 2017. This timely appeal followed.

On appeal, Father raises one issue for our review:

[Whether] the [trial] court erred by denying the support exceptions of [Father] and overstating the net income attributable to [Father]?

Father's Brief at 3.

Father argues the trial court erred by adopting the conclusions of the support Master and attributing an earning capacity to Father that was not based on the facts presented to the court. *Id.* at 14. We agree.

Our standard of review in support cases is well established:

We review child support awards for an abuse of discretion. A court does not commit an abuse of discretion merely by making an error of judgment. Rather, a court abuses its discretion if it exercises judgment that is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record. [The Pennsylvania Supreme] Court has further observed that [an appellate court] will not disturb a support order unless the trial court failed to consider properly the requirements of the rules governing support actions.

*Hanrahan v. Bakker*, ___ A.3d ___, 2018 WL 3032674, at *15-16 (Pa. 2018) (internal citations omitted).

Child support "shall be awarded pursuant to statewide guidelines." 23 Pa.C.S.A. § 4322(a). "In determining the ability of an obligor to provide support, the guidelines place primary emphasis on the net incomes and earning capacities of the parties." **Mackay v. Mackay**, 984 A.2d 529, 537 (Pa. Super. 2009) (internal quotations and citations omitted).

Pennsylvania Rule of Civil Procedure 1910.16–2 provides that, generally, "the amount of support to be awarded is based upon the parties' monthly net income." Pa.R.C.P. 1910.16–2. Nevertheless, Rule 1910.16–2 lists certain exceptions to this general rule. As is relevant to the current appeal, Rule 1910.16–2(d)(4) declares that, "[i]f the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity." Pa.R.C.P. 1910.16–2(d)(4).

To determine a party's earning capacity, the rule states:

> Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P.1910.16–2(d)(4).

In this case, the trial court concluded that Father's actual earnings in 2016 were "$7,468 . . . or about $622 a month." Trial Court Opinion, 12/19/17, at 2. The trial court then agreed with the Master's conclusion that Father "has not been diligent in his efforts to obtain [appropriate] employment" and, thus, the trial court was required to "impute to [Father] an income equal to [Father's] earning capacity." **Id.** at 7; **see also** Pa.R.C.P. 1910.16–2(d)(4).

However, the trial court and the Master provided no explanation as to how they calculated Father's earning capacity to be $50,000.00 per year. To be sure, both the trial court and the Master simply declared, in conclusory fashion, that "imputing [] an earning capacity of $50,000 gross per year . . . is consistent with the evidence presented in light of Father's age, education, training, work experience, health, and earning history." Trial Court Opinion, 12/19/17, at 8; **see also** Master's Report, 7/7/17, at 9-10 ("[b]ased on the testimony offered and in consideration of [Father's] age, health, education, employment history and child care responsibilities, the Master concludes [Father] has a gross annual earning capacity of $50,000"). Neither the trial court nor the Master described how the relevant statutory factors, either individually or collectively, impacted Father's designated earning capacity. Further, viewing the evidence of record, we conclude that imputing an earning capacity of $50,000.00 per year to Father is manifestly unreasonable and constitutes an abuse of discretion.

The evidence in this case demonstrates that Father possesses a high school diploma, completed three years of college (with no degree), and completed a one-month real estate class. Trial Court Opinion, 12/19/17, at 2; Master's Report, 7/7/17, at 7-8; **K.H. v. A.H.**, 170 A.3d 1201 (Pa. Super. 2017) (unpublished memorandum) at 2. Father does not have a real estate license and, other than his personal businesses, his last place of legal employment was as a lifeguard in 2006, where he made $12.00 per hour. N.T. Support Hearing, 5/18/17, at 58-59.

With respect to Father's businesses, during the December 28, 2015 child support hearing, Father testified that he owned and operated two businesses: On the Rise Productions, LLC and Rich and Poor Rental, LLC. The Master calculated that Father's 2013 and 2014 income from On the Rise Productions was, respectively, $10,158.00 and $6,634.00 and that Father's 2014 income from Rich and Poor Rental was $5,760.00. Master's Report, 2/9/16, at 5. During the May 18, 2017 support hearing, Father testified that "he still operates On the Rise Productions, LLC, but Rich and Poor Rental, LLC ceased [operations] in 2015, as evidenced by the Articles of [C]ancellation." Master's Report, 7/7/17, at 9; N.T. Support Hearing, 5/18/17, at 53-56. The trial court found that, in 2016, Father generated $7,468.00 in income from Rich and Poor Rental. Trial Court Opinion, 12/19/17, at 2 and 7.

While it is true that the evidence reflects Father is approximately 33 years old, has a driver's license, has no relevant, stated health conditions, and

has no childcare responsibilities, there is simply no evidence that indicates Father's education or work history would enable him to earn $50,000.00 per year.[4,5]    Therefore, we conclude that the trial court abused its discretion

_____

[4] We note that, in calculating Father's earning capacity, the trial court again cited to evidence that Father possesses or owns costly items (such as a Louis Vuitton bag and a 2007 Infiniti FX automobile), drinks expensive champagne, and takes costly personal vacations.  While this evidence might be very relevant as to the issue of Father's **actual net income and personal assets**, the evidence is minimally relevant as to the issue of Father's **earning capacity** – and the evidence does not demonstrate that Father is realistically capable of earning $50,000.00 per year in any legal profession.  ***See K.H. v. A.H.***, 170 A.3d 1201 (Pa. Super. 2017) (unpublished memorandum) at 8-10.

[5] In ***Moore v. Moore***, this Court held that "[i]t is against public policy to base a court order of support upon the assumption that the defendant will violate the law in order to acquire the necessary funds to pay it. . . .  A support order may not be based upon the assumption that continuous unlawful pursuits will provide the anticipated income."  ***Moore v. Moore***, 181 A.2d 714, 715 (Pa. Super. 1962).  To the extent ***Moore*** holds that a court cannot calculate an individual's **earning capacity** based upon illegal pursuits and opportunities, the rule makes sense:  such an order would, in effect, force the obligor to engage in illegal behavior.  However, to the extent ***Moore*** holds that a court cannot recognize illegal funds that the obligor is currently receiving – from illegal behavior that the obligor is currently pursuing – to calculate an individual's **net income**, the rule seems misguided, unrealistic, and contrary to both the statutory language and theory behind the child support guidelines.  ***See*** 23 Pa.C.S.A. § 4302 (defining the term "income" as including "any form of payment due to and collectible by an individual **regardless of source**") (emphasis added); ***Ball v. Minnick***, 606 A.2d 1181, 1189 (Pa. Super. 1992) (declaring that the Child Support Guidelines are based upon the Income Shares Model and that the "Income Shares Model is predicated on the concept that **the child should receive the same proportion of parental income that he or she would have received if the parents lived together**") (emphasis added).  Further, as the Court of Special Appeals of Maryland recognized, a child support order that is based upon a continuous source of illegal income does not "require that [the obligor] remain in [that] type of work."  ***Gallagher v. Gallagher***, 703 A.2d 850, 857 (Md. App. 1997).  The order simply recognizes that the obligor has continued to engage in the

when it imputed to Father an income equal to an earning capacity of $50,000.00 per year. We must vacate the trial court's order and remand for further proceedings.

Order vacated. Case remanded. Jurisdiction relinquished.

President Judge Emeritus Stevens joins.

Judge McLaughlin files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/18

___

illegality and has continued to receive illegal income. *Id.* As the *Gallagher* Court recognized, "if [the obligor] is able to show at a later point in time that he no longer engages in [the illegal activity], this may constitute a circumstance allowing for a modification in the [support] award." *Id.*