704 A.2d 532

**Donald CRABILL**

**v.**

**Geraldine CRABILL.**

**No. 693, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Jan. 14, 1998.

250

Allen J. Kruger, Laurel, for Appellant.

Dorothy S. Fait and Brian D. Wise (Fait & Malment, on the brief), Rockville, for Appellee.

Submitted before HARRELL and HOLLANDER, JJ., and JAMES S. GETTY, J. (retired), Specially Assigned.

HARRELL, Judge.

Appellant, Donald Anderson Crabill, filed a Complaint for Absolute Divorce in the Circuit Court for Montgomery County on or about 22 December 1995 alleging voluntary separation. On 8 February 1996 appellee, Geraldine Mae Crabill, filed a Counterclaim for Absolute Divorce alleging constructive desertion and requesting indefinite alimony. Domestic Relations Master Mahaffey ("master") held a hearing on 5 August 1996. The master issued her Report and Recommendations on 22 October 1996. The master imputed to Mr. Crabill a monthly income of $1,458.33, in addition to his retirement income, based on evidence that Mr. Crabill had the experience and ability to continue working as a house painter. Although no monetary award was made, the master found that Mr. Crabill should pay $1,000.00 per month in indefinite alimony.

Both parties filed exceptions. After a hearing on 4 February 1997, the Circuit Court for Montgomery County (Weinstein, J.) issued an Opinion and Order. The circuit court reduced the amount of income imputed to Mr. Crabill to $933.33 per month and reduced the indefinite alimony to be paid to Mrs. Crabill to $631.93 per month. The court did not impute income to Mrs. Crabill because it concluded that, although Mrs. Crabill could earn more as a paralegal, the special needs of the Crabills' daughter, Nadine, would be better served if Mrs. Crabill maintained her current employment. This timely appeal followed.

## ISSUES

Mr. Crabill presents the following issues for our review, which we have rephrased:

I. Did the circuit court err in imputing income to Mr. Crabill?

II. Did the circuit court err in determining the amount of income imputed to Mr. Crabill?

III. Did the circuit court err in not imputing income to Mrs. Crabill?

IV. In determining the amount of alimony to award Mrs. Crabill, did the circuit court err in trying to equalize the parties' income?

## FACTS

Mr. and Mrs. Crabill were married on 12 May 1978 in Kensington, Maryland. They had two children, Nadine (born 2 January 1979) and Elizabeth (born 3 December 1980). The parties initially separated in April 1994, but reconciled approximately six months later. Mr. Crabill, a recovering alcoholic, completed an educational program on domestic violence and attended therapy as part of the reconciliation attempt. Nevertheless, on 25 January 1995, the parties again separated.

At the master's hearing on 5 August 1996, Mrs. Crabill testified that the parties' oldest child, Nadine, suffers from emotional problems, is under the care of several doctors, and is on medication. Mrs. Crabill, who was 49 years old at the time of the master's hearing, works full-time as a secretary at Our Lady of Mercy Catholic Church at an annual salary of $21,763.22 ($1,813.61 per month). She works a flex-time schedule, allowing her to leave the premises or reschedule her work day whenever necessary so that she may care for Nadine. Mrs. Crabill testified that she recently had to take a week off, without advance notice to her employer, to care for Nadine after Nadine attempted suicide. Mrs. Crabill is a qualified paralegal and has held higher paying jobs in the past as a paralegal and as a personnel officer.

Mr. Crabill, who was 53 years old at the time of this appeal, retired voluntarily from the District of Columbia Fire Department on 28 February 1995. Mr. Crabill testified at the master's hearing that he receives gross retirement income of $54,744.00 per year. Under the terms of a stipulated division of Mr. Crabill's pension, Mrs. Crabill receives 50% of the marital portion of Mr. Crabill's retirement, or $1,208.93 per month. Mr. Crabill receives $3,353.07 per month.

Mr. Crabill testified that he contributed $72,000.00 towards the purchase of the marital home in 1979. The house, according to appellant, has been refinanced three times since 1979 to pay off marital debt. The mortgage, originally $62,000.00, increased to more than $200,000.00. At the time of the master's hearing, Mr. Crabill had been paying the $1,727.00 per month mortgage payment pursuant to a court order of 8 March 1996.

While the parties were married, Mr. Crabill also worked part-time for his brother, who operates a contracting and painting business. In the four years previous to this case, Mr. Crabill testified that he earned an average of $4,800.00 annually from part-time painting. Mr. Crabill testified at the master's hearing, however, that he had had a falling out with his brother and had not worked with him for four or five months previous to the hearing. In addition, Mr. Crabill testified that he was not bonded as a contractor, did not advertise, and owned no painting equipment.

Mrs. Crabill called an expert witness, a vocational rehabilitation counselor, to testify at the master's hearing regarding Mr. Crabill's earning potential as a house painter. The expert testified that entry level painters can earn approximately $10.00 per hour, while more experienced painters or contractors can earn up to $25.00 per hour. The expert witness testified that a painter would be paid approximately $250.00 to paint an average size room in a house. Mr. Crabill disagreed with the expert's estimate, stating that a painter would probably receive between $100.00 and $125.00 for painting one room.

On 22 October 1996 the master issued her report and recommendations.[1] The master found that the circumstances of the parties' separation justified granting Mrs. Crabill a Judgment of Absolute Divorce on the ground of constructive desertion.

With respect to Mr. Crabill's income, the master found that Mr. Crabill's painting income averaged $4,800.00 a year for the past four years and that he earned $7,000.00 in 1995, the year of his retirement. Regarding Mr. Crabill's possible future earnings, the master made the following finding:

> The Plaintiff [Mr. Crabill] is a young man, and despite his recovery situation, the Master finds that he is capable of working, and should work at this time to contribute to the family needs. It is not clear exactly what the Plaintiff can immediately earn. The Master finds that the Plaintiff should be capable of earning a minimum of $10.00 per hour for 35 hours per week for 50 weeks per year, or $1,458.33 per month.

The master determined that Mr. Crabill's total monthly income was $4,811.40 ($3,353.07 from retirement pay and $1,458.33 from painting) and Mrs. Crabill's total monthly income was $3,022.54 ($1,813.61 from earnings and $1,208.93 from her share of Mr. Crabill's retirement).

The master found that the parties did not live within their income during the marriage, noting that $155,000.00 in equity had been removed from the family home and that the parties' stated after-tax needs would require a gross combined taxable income of at least $150,000.00 per year. The court stated that, even if Mr. Crabill's painting income doubled, the family would not be able to meet expenses.

With respect to alimony, the master found that Mrs. Crabill was not able to be wholly self-supporting at the time of the

---

1. The master made recommendations regarding a monetary award, payment of private school tuition for Elizabeth, child support, child custody, use and possession of the marital home, and attorneys' fees. These recommendations are not at issue on appeal.

hearing and awarded Mrs. Crabill $1,000.00 per month of indefinite alimony. Although the master found that, based on her qualifications, Mrs. Crabill may be able to obtain higher paying employment in the future if her family responsibilities diminish, the master found that Mrs. Crabill's current employment was suitable. The master did not speculate as to when Mrs. Crabill would be fully self-supporting. Because the parties lived to a standard beyond their income during the marriage, the master did not find standard of living a governing factor in awarding Mrs. Crabill alimony. The master also found that during the eighteen-year marriage, each party contributed monetarily and nonmonetarily to the well-being of the family. With regard to the circumstances leading to the estrangement of the parties, the master found that Mr. Crabill's alcoholism and abuse appeared to have been the primary contributing factors. The master found that Mr. Crabill, who was 53 years old at the time of the hearing, appeared to be in good physical and mental health and had been in recovery from alcoholism for four and one half years. Mrs. Crabill, who was 49 years old at the time of the hearing, was also found to be in good physical and mental health, although under a great deal of stress due to Nadine's problems. The master considered the financial needs and resources of the parties and found that Mr. Crabill would be able to meet his needs while making the recommended alimony payments.

The master concluded that Mrs. Crabill

has made as much progress toward becoming self-supporting as can reasonably be expected at this time and for the foreseeable future, and that the respective standards of living of the parties will be unconscionably disparate without the award of indefinite alimony. Indefinite alimony will allow the situation to be adjusted in the future, should the parties' respective situations change.

Both parties filed exceptions.[2] Mr. Crabill excepted to the master's recommendation that he pay Mrs. Crabill $1,000.00

---

**2.** Mrs. Crabill's exceptions do not relate to any of the issues on appeal.

per month in alimony, claiming that there was insufficient disparity of income to warrant alimony. Mr. Crabill also asserted that if he were required to pay $1,000.00 per month, he would not be able to support himself. Mr. Crabill further claimed that the master erred in imputing $17,500.00 additional annual income to him because it was inappropriate to require Mr. Crabill, a retiree, to pursue a new career. He also excepted to the master's failure to impute additional income to Mrs. Crabill, arguing that Mrs. Crabill is not working up to her maximum ability.[3]

On 4 February 1997 the Circuit Court for Montgomery County (Weinstein, J.) issued an opinion and order affirming in part and modifying in part the master's report and recommendations and remanded the case for a determination of two issues not pertinent to this appeal.

Regarding the income imputed to Mr. Crabill, the court affirmed the master's recommendation to impute income, but modified the amount. The court found the expert vocational witness's analysis flawed because Mr. Crabill, unlike the painters the expert interviewed, is not bonded, does not advertise, and has little overhead. The court noted that painters' work is often seasonal and reasoned that Mr. Crabill may be unemployed for as much as three months of the year. The court then imputed an income of $11,200.00 annually, from earning $7.00 per hour, 8 hours per day, for 40 weeks each year. The court concluded that imputing $933.33 per month, instead of $1,481.00 per month, was more realistic and fair.

In determining alimony, the court concurred with the master that equity in this case demanded an award of indefinite alimony, but disagreed with the amount recommended by the master. Because the court reduced the amount of income imputed to Mr. Crabill, it also reduced the amount of alimony. The court modified the alimony award to $631.93 per month.

---

**3.** Mr. Crabill also excepted to several recommendations not at issue on appeal.

In adopting the master's recommendation to grant alimony, the court considered the following factors and made findings according to Md.Code (1984, 1991 Repl.Vol., 1997 Supp.), § 11–106 of the Family Law Article (hereinafter FL § 11–106):

1) *Ability of the party seeking alimony to be wholly or partly self-supporting*

Geraldine Crabill has the responsibility of caring for Nadine, someone who needs constant attention. Though she has earned higher salaries as a paralegal in the past, she needs the flexibility her current job provides to properly care for Nadine.

2) *Time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment*

Geraldine Crabill is trained as a paralegal but, again, her commitment to Nadine inhibits her from working at a job that does not permit flex time.

3) *Standard of living that the parties established during the marriage*

The Court did not consider this as a relevant factor as the parties lived beyond their means.

4) *Duration of the Marriage*

The parties were married for approximately 18 years.

5) *Contributions, monetary and nonmonetary, of each party of the well being of the family*

Both parties contributed significantly to the marriage.

6) *Circumstances that contributed to the estrangement of the marriage*

The estrangement stems primarily from the husband's alcoholism and verbal attacks.

7) *Age of the parties*

Donald Crabill is fifty three (53) years old and Geraldine Crabill is forty nine (49) years old.

8) *Physical and mental condition of the parties*

Both parties appear fit.

9) *Ability of the party of whom alimony is sought to meet the party's own needs while meeting the needs of the party seeking alimony*

Donald Crabill is currently living in a rented apartment for $300 a month. His economic status should improve when he actively seeks employment as a painter.

10) *Any agreement of the parties*

Donald Crabill was paying for Elizabeth's private schooling but that agreement has ended.

11) *Financial needs and financial resources of each party; income, monetary award, financial obligations of the party and retirement benefits*

Geraldine Crabill earns $1,813.61 per month and receives $1,208.93 of Mr. Crabill's retirement benefits equaling $3,022.54. Donald Crabill retains the remainder of the retirement benefit, $3,353.07, and imputed income of $933.33 per month.

Monthly alimony is $631.93, derived by factoring in Donald Crabill's pension subtracted by Geraldine Crabill's share of that pension equals $3,353.07. Add Mr. Crabill's imputed income of $933.33 per month to $3,353.07 for a total of $4,286.40. Subtract Geraldine Crabill's $3,022.54 from Donald Crabill's $4,286.40 for a difference of $1,263.96. This was divided by two (2), a total of $631.93 per month. This amount provides identical incomes and ensures no unconscionable disparity remains.

Regarding Mr. Crabill's contention that Mrs. Crabill was not working to her maximum ability, the court found that Mrs. Crabill's current position allows her the flexibility needed to care for Nadine. The court pointed to two benefits of Mrs. Crabill's position at Our Lady of Mercy: it provides an income and it allows Mrs. Crabill to leave at a moment's notice to care for Nadine. The court concluded that although Mrs. Crabill has the ability to earn more as a paralegal, the monetary gain would be detrimental to the children.

### DISCUSSION

The award of alimony is governed by FL § 11–106. The purpose of the alimony statute is to provide trial courts with the ability to ensure "an appropriate degree of spousal support ... after the dissolution of a marriage." *Tracey v. Tracey*, 328 Md. 380, 388, 614 A.2d 590 (1992). An alimony award will not be disturbed on appeal unless the trial court abused its discretion or rendered a judgment that was clearly wrong. *Tracey*, 328 Md. at 385, 614 A.2d 590; *Brodak v. Brodak*, 294 Md. 10, 28–9, 447 A.2d 847 (1982). As this court has stated, " 'Appellate discipline mandates that, absent a clear abuse of discretion, a chancellor's decision that is grounded in law and based upon facts that are not clearly erroneous will not be disturbed.' " *Kierein v. Kierein*, 115 Md.App. 448, 452, 693 A.2d 1157 (1997) (quoting *Bagley v. Bagley*, 98 Md.App. 18, 31–32, 632 A.2d 229 (1993)). Thus, when reviewing an alimony award, the appellate court should accord great deference to the findings and judgments of the trial court. *Tracey*, 328 Md. at 385, 614 A.2d 590. The trial court's ruling will not be reversed simply because the appellate court would not have made the same ruling on the available evidence. *North v. North*, 102 Md.App. 1, 14, 648 A.2d 1025 (1994). Only where the trial court's decision is violative of fact and logic, or where no reasonable person would take the view adopted by the trial court, will the appellate court disturb the chancellor's ruling. *Id.* at 13–14, 648 A.2d 1025.

Fixed-term, "rehabilitative" alimony is clearly preferred to indefinite alimony. *Tracey*, 328 Md. at 391, 614 A.2d 590. Nevertheless, the Legislature and the courts have recognized that rehabilitative alimony may not always be appropriate. FL § 11–106(c) authorizes trial courts to award indefinite alimony if either (1) due to age, illness, infirmity, or disability, the dependent spouse cannot reasonably be expected to become self-supporting, or (2) the difference in lifestyle between the parties will remain "unconscionably disparate," even if both spouses become fully self-supporting. The party

seeking such alimony, however, bears the burden of proving the statutory requirements. *Thomasian v. Thomasian,* 79 Md.App. 188, 195, 556 A.2d 675 (1989).

 FL § 11–106(b) also sets forth the factors that the trial court must review when making an award of alimony. Although the court is required to give consideration to each of the factors stated in the statute, it is not required to employ a formal checklist, mention specifically each factor, or announce each and every reason for its ultimate decision. *Doser v. Doser,* 106 Md.App. 329, 356, 664 A.2d 453 (1995); *Hollander v. Hollander,* 89 Md.App. 156, 176, 597 A.2d 1012 (1991). We may examine the record as a whole to see if the court's findings were based on the mandated factors. *Doser,* 106 Md.App. at 356, 664 A.2d 453.

With this standard of review in mind, we turn to the issues before this Court.

## I.

 Mr. Crabill asserts that the trial court erred in imputing income to him. Specifically, Mr. Crabill argues that, as a retired person, he should not have to undertake a new career. Based on the evidence adduced at the master's hearing, however, it appears that Mr. Crabill has substantial experience as a painter. Mr. Crabill testified that he had been working for his brother as a painter and contractor for ten years, and Mrs. Crabill testified that Mr. Crabill had worked as a painter and contractor throughout the duration of the eighteen-year marriage. Records produced at the master's hearing showed that Mr. Crabill earned an average of $4,800.00 per year for the past four years from painting on a part-time basis. In 1995, the year Mr. Crabill retired, his painting earnings totaled $9,275.00.[4] Thus it is apparent from

---

4. The master's report and recommendation stated that, based on exhibit 8 introduced at the master's hearing, Mr. Crabill earned over $7,000.00 in painting income in 1995. A review of the record before us shows that Mr. Crabill received fourteen checks from his brother totaling

the record that Mr. Crabill, far from being forced into a "new" career, is merely being encouraged to continue a career in which he has considerable experience.

In addition, FL § 11–106(b)(11)(i) requires the court, in determining the amount of alimony, to consider the financial resources of each party, including "*all* income and assets." (emphasis added). The trial court acted within its discretion in considering Mr. Crabill's painting income as part of *all* income for alimony purposes.[5]

Mr. Crabill cites no Maryland law supporting the proposition that it is improper for a court to impute income to a voluntarily retired person. He instead relies on a Pennsylvania case, *Commonwealth v. Ross*, 206 Pa.Super. 429, 213 A.2d 135 (1965), in which the court stated that it could not require a retired person to "forego his well-deserved retirement and seek employment anew for an indefinite period...." *Id.* 213 A.2d at 138. *Ross* is inapposite. The retiree in *Ross* was sixty-five years old and had recently been hospitalized. *Id.* 213 A.2d at 137. Additionally, the court emphasized that the parties had lived together for more than six months at their newly reduced income. *Id.* 213 A.2d at 138. In determining the amount of alimony the wife should receive, the court found that when retirement reduces the income of the couple, the wife who subsequently leaves the marital domicile cannot be expected to be restored to the standard of living she enjoyed while her husband was working. *Id.* None of these factors is

---

$9275.00, which Mr. Crabill acknowledged were all from painting income.

5. Unlike *Tracey v. Tracey*, 328 Md. 380, 389, 614 A.2d 590, where the court declined to consider the income from Mrs. Tracey's part-time job at McDonald's when determining alimony, in this case Mr. Crabill's part-time employment was neither stop-gap nor short in duration. For at least ten years, and maybe more, Mr. Crabill received wages regularly for painting and contracting. He is not being required to work 70 hours a week, nor is he being "consign[ed] ... to an existence of unremitting toil" by including his part-time (and now possibly full-time) income in the alimony calculation. *See Tracey*, 328 Md. at 390, 614 A.2d 590 (citing *Stuczynski v. Stuczynski*, 238 Neb. 368, 471 N.W.2d 122, 126 (1991)).

present in the case at hand. Mr. Crabill retired one month after the Crabills separated. Mrs. Crabill never had the chance to "learn to adjust to [her] newly-limited means." *Id.* 213 A.2d at 138. Furthermore, Mr. Crabill is substantially younger than the retiree in *Ross,* is in good health, and has been consistently working as a painter for at least the past ten years.

Finally, we note that *Ross* actually supports the court's decision to impute income to Mr. Crabill. The Pennsylvania court stated that "in fixing the amount of a support order, [the trial court] is not restricted by the actual income of the husband, but may take into consideration his assets, earning capacity and other attendant circumstances." *Id.* 213 A.2d at 137. We find that the trial court here properly imputed income to Mr. Crabill based on his experience and ability as a painter.

## II.

Mr. Crabill next argues that the trial court erred in the amount of income it imputed. Claiming that the amount imputed was not realistic or fair, Mr. Crabill asks us to remand for a more appropriate consideration of his potential painting income.

At the master's hearing, the vocational rehabilitation counselor testified regarding Mr. Crabill's earning potential as a painter. The expert testified that, for contractors, gross wages range between $20.00 and $35.00 per hour, and that a painter could earn approximately $250.00 per room for an average size room. In reaching this opinion, the expert used a national computer database of jobs, Jobquest, then narrowed the search to Montgomery County, Maryland, and received wage information from that database. Jobquest estimated that entry level painters working for a company earn approximately $10.00 per hour, while more experienced painters working as contractors earn approximately $20.00 per hour.

The expert then compiled a list of employers in Montgomery County to obtain more specific wage data. The expert

testified that she spoke with several painters regarding Mr. Crabill's qualifications. She described Mr. Crabill as a painter who was 52 or 53 years old and had fifteen years of experience. The painters with whom the expert spoke were bonded but did not advertise in the Yellow Pages. These painters told the expert that they charge approximately $250.00 per room.

After considering this testimony, the master found that Mr. Crabill should be capable of earning a minimum of $10.00 per hour for 35 hours per week for 50 weeks per year, or $1,458.33 per month.

▌ The trial court rejected the amount of income the master imputed to Mr. Crabill. Finding the expert's analysis flawed because Mr. Crabill did not fit the test group in that he is not bonded, does not advertise, and has little overhead, the trial court found the master's estimate too high. The trial court then imputed an income of $11,200.00 annually, finding that Mr. Crabill had the ability to earn $7.00 per hour, 8 hours per day, for 40 weeks each year. The trial court acknowledged that painting is often seasonal work and that Mr. Crabill may not be able to obtain employment throughout the year. The trial court considered realistic and fair an imputed income amount of $933.33 per month.

We note that Mr. Crabill earned $9,275.00 in painting income in 1995, the year he retired from the Fire Department. The trial court's assessment of what Mr. Crabill would be able to earn when he focused full-time on his painting career was only $2,075.00 greater than the amount Mr. Crabill actually earned in 1995. We recognize that although the trial court speculated as to Mr. Crabill's future income, "[i]n some sense, any determination of 'potential income' must necessarily involve a degree of speculation." *Reuter v. Reuter*, 102 Md.App. 212, 223, 649 A.2d 24 (1994). Further, we must accord great deference to the findings of the trial court. *Tracey*, 328 Md. at 385, 614 A.2d 590. The trial court's decision in this case was not "violative of fact and logic," nor was the decision "clearly against the logic and effect of facts and inferences before the court." *North*, 102 Md.App. at 13–14, 648 A.2d

1025. Based on the evidence before the court, we find that the trial court's decision was grounded in law and based on facts that are not clearly erroneous. Therefore we affirm the trial court's decision to impute $11,200.00 annually in painting income to Mr. Crabill.

### III.

Mr. Crabill next argues that the trial court should have imputed income to Mrs. Crabill because the master and the trial court found that she was not working at her highest level of earning capacity. Mr. Crabill is correct that both the master and the trial court found that Mrs. Crabill, who is a qualified paralegal, has held higher paying jobs in the past and may be able to obtain higher paying employment in the future, thereby becoming self-sufficient. Nevertheless, both the master and the trial court found Mrs. Crabill's current employment acceptable based on other considerations.

Specifically, the master found that Nadine suffers from severe emotional problems and needs a high level of adult supervision. Nadine has a marked tendency to wander off, resulting in over a dozen missing person requests. Mrs. Crabill's position at Our Lady of Mercy allows her the flexibility to care for Nadine. Because of Mrs. Crabill's flex-time schedule, she may leave the premises at any time and reschedule her work day, with no advance notice. On more than several occasions Mrs. Crabill has taken advantage of this flexible schedule to care for Nadine.

The trial court also found that Mrs. Crabill's position at Our Lady of Mercy provides her with the flexibility she needs to care for Nadine. The court stated that "she has the potential to earn more as a paralegal but [felt that] a monetary gain, in the end, would be detrimental to the children."

When determining whether to grant an alimony award, the court cannot require a spouse to take unreasonable steps in order to become self-supporting. *Reuter,* 102 Md. App. at 231, 649 A.2d 24. In addition, "the law and policy of this State is that the child's best interest is paramount." *Id.*

In the case at hand, the master heard testimony that Nadine's emotional and physical health would be adversely affected if Mrs. Crabill were not available at a moment's notice to care for her. The trial court found that requiring Mrs. Crabill to obtain a job where she would not be able to care for Nadine would not be in Nadine's best interest. We conclude that the trial court did not abuse its discretion by failing to require Mrs. Crabill to obtain higher paying employment. Imputing income to Mrs. Crabill, in this case, would have been contrary to the best interests of the Crabills' children, and thus the trial court did not err in failing to impute income to Mrs. Crabill.

## IV.

Mr. Crabill finally argues that the trial court erred in seeking to equalize the parties' incomes through the alimony award. Mr. Crabill posits that because there is no legal standard requiring that alimony be calculated so as to provide equal incomes to the parties, the trial court erred in attempting to do so.

In determining the amount of alimony to grant Mrs. Crabill, the trial court considered in detail the factors listed in FL § 11–106. Taking into account the modified imputed income amount, the trial court lowered the master's recommendation of $1,000.00 per month in alimony to $631.93 per month. This amount, the trial court found, "provides identical incomes and ensures no unconscionable disparity remains."

There is no bright line for determining the propriety of an alimony award. *Caldwell v. Caldwell*, 103 Md.App. 452, 464, 653 A.2d 994 (1995). The Court of Appeals consistently has declined to adopt "a hard and fast rule regarding any disparity" in income for purposes of awarding indefinite alimony. *Tracey*, 328 Md. at 393, 614 A.2d 590. Each case depends upon its own circumstances "to ensure that equity be accomplished." *Alston v. Alston*, 331 Md. 496, 507, 629 A.2d 70 (1993). We note, however, that gross disparities in income levels frequently have been found unconscionable, and have supported the award of indefinite alimony. *See, e.g., Tracey,*

328 Md. at 393, 614 A.2d 590(28%); *Caldwell,* 103 Md.App. at 464, 653 A.2d 994 (1995) (43%); *Blaine v. Blaine,* 97 Md.App. 689, 708, 632 A.2d 191 (1993) (23%), *aff'd,* 336 Md. 49, 646 A.2d 413 (1994); *Rock v. Rock,* 86 Md.App. 598, 609–11, 587 A.2d 1133 (1991) (20–30%); *Broseus v. Broseus,* 82 Md.App. 183, 186, 570 A.2d 874 (1990) (35%); *Bricker v. Bricker,* 78 Md. App. 570, 577, 554 A.2d 444 (1989) (35%); *Benkin v. Benkin,* 71 Md.App. 191, 199, 524 A.2d 789 (1987) (16%); *Zorich v. Zorich,* 63 Md.App. 710, 717, 493 A.2d 1096 (1985) (20%); *Kennedy v. Kennedy,* 55 Md.App. 299, 307, 462 A.2d 1208 (1983) (34%).

It is clear from the record before us that the trial court determined that even though Mrs. Crabill has made as much progress toward becoming self-sufficient as can reasonably be expected, the respective standards of living of Mr. Crabill and Mrs. Crabill will be unconscionably disparate without an award of indefinite alimony. Because the trial court properly considered the factors contained in FL § 11–106, we do not perceive that the trial court abused its discretion.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.